No. 21-35008

IN THE UNITED STATE COURT OF APPEALS
FOR THE NINTH CIRCUIT

SETONDJI VIRGILE NAHUM,

Plaintiff-Appellant,

v.

THE BOEING COMPANY
and

JEFFREY DILLAMAN,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Washington
No. 2:19-cv-1114-BJR

**RESPONSE BRIEF OF
THE BOEING COMPANY AND JEFFREY DILLAMAN**

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

David L. Schenberg
7700 Bonhomme Ave., Suite 650
St. Louis, Missouri 63105
314.802.3935
david.schenberg@ogletree.com

## RULE 26.1 DISCLOSURE

The Boeing Company has no parent corporation. State Street Bank & Trust Company, trustee for Boeing's ERISA qualified savings plan and The Boeing Company Voluntary Investment Plan, nominally owns more than 10% of Boeing stock. State Street Bank & Trust Company is a subsidiary of State Street Corporation, which is a publicly traded company. Evercore Partners, a publicly traded company acting through its subsidiary Evercore Trust Company, N.A., beneficially owns more than 10% of Boeing stock by reason of its investment management authority over Boeing stock held in The Boeing Company Voluntary Investment Plan on behalf of The Boeing Company Employee Savings Plans Master Trust.

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE...........................................................i

TABLE OF AUTHORITIES...................................................iv

STATEMENT OF JURISDICTION...........................................1

STATEMENT OF THE ISSUES................................................2

9th Cir. R. 28-2.7 STATEMENT...............................................3

STATEMENT OF THE CASE .................................................4

    Boeing Hires Plaintiff (*See* 4-SER-828, ¶5)..........................4

    Plaintiff Does Not Perform Well .........................................5

    Second Disciplinary Action ...............................................10

    Third Disciplinary Action Results in Termination.............14

    Plaintiff's internal complaints omit any reference to race.................19

    Proceedings in the district court.........................................20

SUMMARY OF ARGUMENT ................................................22

ARGUMENT ........................................................................23

    I.  The district court's order granting defendants
    summary judgment. ..........................................................23

    II.  The district court's order dismissing Counts II, III,
    VI and VII.......................................................................43

    III.  Discovery issues .......................................................51

    IV.  The district court's order denying appointment of
    new counsel. ....................................................................54

CONCLUSION ........................................................................56

Form 8. Certificate of Compliance for Briefs .........................57

Form 15. Certificate of Service for Electronic Filing .............58

ADDENDUM TO RESPONSE BRIEF OF
THE BOEING COMPANY AND JEFFREY DILLAMAN ....................59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
106 S.Ct. 2505 (1986) .......................................................................... 23

*Anthony v. Trax Int'l Corp.*,
955 F.3d 1123 (9th Cir. 2020) ....................................................... 28, 31

*Armijo v. Yakima HMA, LLC*,
868 F. Supp.2d 1129 (E.D. Wash. 2012) ............................................ 41

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) .......................................................................... 44

*Bradley v. Harcourt, Brace and Co.*,
104 F.3d 267 (9th Cir. 1996) .............................................................. 30

*Brown v. City of Los Angeles*,
521 F.3d 1238 (9th Cir. 2008) ....................................................... 39, 41

*Buhl v. Abbott Lab.*,
817 F.App'x 408 (9th Cir. 2020) ................................................... 29, 30

*Caldwell v. State of Washington*,
278 F.App'x 773 (9th Cir. 2008) ......................................................... 36

*Campbell v. Hawaii Dept. of Educ.*,
892 F.3d 1005 (9th Cir. 2018) ....................................................... 31, 32

*Celotex Corp v. Catrett*,
106 S.Ct. 2548 (1986) .......................................................................... 24

*Chapman v. AI Transp.*,
229 F.3d 1012 (11th Cir. 2000) ........................................................... 24

*Choi v. Mabus*,
617 F.App'x 669 (9th Cir. 2015) ......................................................... 32

iv

*City of Oakland v. BP PLC*,
969 F.3d 895 (9th Cir. 2020)..............................................................44

*Doe v. Gonzaga Univ.*,
24 P.3d 390 (2001), *rev'd on other grounds*, 536 U.S. 273
(2002)..................................................................................................41

*Evans v. Hillman Grp.*,
2022 WL 4621452 (S.D. Ohio. Sept. 30, 2022) ...................................34

*Faragher v. City of Boca Raton*,
118 S.Ct. 2275 (1998).........................................................................33

*Freeman v. Zilliox*,
2022 WL 2057740 (C.D. Cal. April 29, 2022) ....................................49

*Gannon v. Potter*,
298 F.App'x 623 (9th Cir. 2008).........................................................45

*Giles v. Nat'l R.R. Passenger Corp.*,
59 F.4th 696 (4th Cir. 2023) ...............................................................27

*Great Am. Fed. Sav. & Loan Ass'n. v. Novotny*,
99 S.Ct. 2345 (1979)...........................................................................50

*Harris v. Sutton Motor Sales & RV Consignments Corp.*,
406 F.App'x 181 (9th Cir. 2010).........................................................37

*Hawn v. Exec. Jet Mgmt.*,
615 F.3d 1151 (9th Cir. 2010).........................................23, 24, 25, 28

*Herron v. KING Broad. Co.*,
746 P.2d 295 (1987), *decision clarified on reh'g*, 776 P.2d
98 (1989).............................................................................................42

*Herron v. Tribune Pub. Co.*,
736 P.2d 249 (1987) ...........................................................................41

*Hodges v. CGI Fed. Defense & Intelligence*,
727 F.App'x 236 (9th Cir. 2018).........................................................27

*Home Indem. Co. v. Lane Powell Moss and Miller*,
    43 F.3d 1322 (9th Cir. 1995) ............................................................... 52

*IMDB.com v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) ........................................................... 51

*Kopelev v. Boeing Co.*,
    2022 WL 17547807 (9th Cir. Dec. 9, 2022) ....................................... 46

*Loomis v. Cornish*,
    836 F.3d 991 (9th Cir. 2016) ................................................. 23, 34, 40

*Martinez v. Spencer*,
    771 F.App'x 403 (9th Cir. 2019) ......................................................... 31

*Mascrenas v. Wagner*,
    2021 WL 3095127 (S.D. Cal. July 22, 2021) ...................................... 55

*Miller v. Sawant*,
    2022 WL 17092791 (W.D. Wash. Nov. 21, 2022) .............................. 39

*Mohr v. Grant*,
    108 P.3d 768 (Wash. 2005) ................................................................. 40

*Mvuemba v. Cty. of Los Angeles*,
    678 F.App'x 536 (9th Cir. 2017) ......................................................... 37

*Nahum v. LMI Aerospace, Inc.*,
    2023 WL 3177806 (E.D. Mo. May 1, 2023), *aff'd*, 2023 WL
    8469936 (8th Cir. Dec. 7, 2003) ......................................................... 55

*Nahum v. Spear*,
    2021 WL 1158854 (W.D. Wash. March 26, 2021), *aff'd*,
    2022 WL 2339914 (9th Cir. June 29, 2022) ....................................... 55

*Ochs v. Eugene Emeralds Baseball Club, Inc.*,
    774 F.App'x 1026 (9th Cir. 2019) ....................................................... 26

*Ohan v. Am. Med. Ass'n.*,
    2024 WL 2828823 (June 4, 2024) ............................................. *passim*

vi

*Phoenix Trading, Inc. v. Loops LLC*,
  732 F.3d 936 (9th Cir. 2013) .......................................................... 39

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  120 S.Ct. 2097 (2000) .................................................................... 24

*Rivera v. McNeal*,
  2021 WL 11634276 (S.D. Ala. July 30, 2021) .................................. 55

*Robello v. Mandalay Corp.*,
  740 F.App'x 607 (9th Cir. 2018) ...................................................... 37

*Robertson v. Dodaro*,
  767 F.Supp.2d 185 (D.D.C. 2011) ................................................... 34

*Robinson v. Adams*,
  847 F.2d 1315 (9th Cir. 1987) .................................................... 29, 31

*Saloojas, Inc. v. Aetna Health of Cal., Inc.*,
  80 F.4th 1011 (9th Cir. 2023) .................................................... 43, 44

*Schiff v. City and Cty. of San Francisco*,
  528 F.App'x 743 (9th Cir. 2013) ...................................................... 30

*Schuler v. Chronicle Broad.*,
  793 F.2d 1010 (9th Cir. 1986) .................................................... 24, 40

*Smith v. Helzer*,
  95 F.4th 1207 (9th Cir. 2024) ......................................................... 47

*Spillane v. Shulkin*,
  692 F.App'x 843 (9th Cir. 2017) ................................................. 33, 36

*St. Mary's Honor Ctr. v. Hicks*,
  113 S.Ct. 2742 (1993) .................................................................... 25

*Steckl v. Motorola*,
  703 F.2d 392 (9th Cir. 1983) .......................................................... 30

*Stevens v. Cty. of San Mateo*,
  267 F.App'x 684 (9th Cir. 2008) ...................................................... 37

*Surrell v. Cal. Water Serv. Co.*,
    518 F.3d 1097 (9th Cir. 2008)......................................................... 33, 36

*Terrell v. Brewer*,
    935 F.2d 1015 (9th Cir. 1991) ..................................................... 54, 55

*Thistle v. Biden*,
    2024 WL 3508641 (9th Cir. July 23, 2024) ........................... 50, 52, 53

*Torgerson v. City of Rochester*,
    643 F.3d 1031 (8th Cir. 2011) .............................................................. 24

*United States v. Reyes*,
    838 F.App'x 276 (9th Cir. 2021)......................................................... 35

*Vasquez v. Cty. of Los Angeles*,
    349 F.3d 634 (9th Cir. 2003)............................................. 32, 36, 37, 45

*Weil v. Citizens Telecom Serv. Co., LLC*,
    922 F.3d 993 (9th Cir. 2019)................................................... 26, 27, 30

*Westendorf v. West Coast Contractors of Nevada, Inc.*,
    712 F.3d 417 (9th Cir. 2013) ............................................................... 32

*Worth v. City of Kalispell*,
    390 F.App'x 740 (9th Cir. 2010)......................................................... 45

**Statutes**

18 U.S.C. § 241 .................................................................... 20, 49, 50

28 U.S.C. §4101 ............................................................................. 20

28 U.S.C. §4101(1) ......................................................................... 39

42 U.S.C. § 1985 ...................................................................... 49, 50

42 U.S.C. §2000e-5(f)................................................................. *passim*

RCW 4.24510 ................................................................................ 41

**Other Authorities**

25 CFR §1.3 ........................................................................ 48

25 CFR §11.448 ...................................................... 20, 47, 51

Fed. R. Civ. P. 56(a) ............................................................ 23

<u>STATEMENT OF JURISDICTION</u>

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Plaintiff asserted claims pursuant to several federal statutes, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e et seq. Plaintiff's defamation claim arises, if at all, pursuant to related facts such that they form part of the same case or controversy.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 in that the district court issued its final Judgment in a Civil Case on December 28, 2020, which disposed of all remaining claims. 1-SER-2. Plaintiff filed a Notice of Appeal on January 4, 2021 as required by Federal Rules of Appellate Procedure 3 and 4.

1

## STATEMENT OF THE ISSUES

I.     Whether this Court should affirm the district court's order granting summary judgment, regarding Plaintiff's claims for discrimination, harassment, and defamation, when Plaintiff failed to present evidence to support them?

II.     Whether this Court should affirm the district court's order dismissing Plaintiff's claims, for retaliation, wrongful termination through abuse of power, conspiracy, and retaliation for tasks and assignments performed in previous positions, when Plaintiff failed to allege any plausible legal and/or factual bases for them?

III.     Whether this Court should affirm summary judgment despite complained of discovery issues, when Plaintiff failed to identify and preserve any error or harm?

IV.     Whether this Court should affirm the district court's order denying appointment of substitute counsel, when the district court *did* appoint counsel but Plaintiff refused to work with them and otherwise failed to demonstrate exceptional circumstances?

2

## 9th Cir. R. 28-2.7 STATEMENT

Pertinent statutes and rules are submitted by addendum bound with this brief.

<u>STATEMENT OF THE CASE</u>

Plaintiff Setondji Nahum worked at Boeing for fifteen months until May 2019, when Boeing terminated his employment after multiple warnings. The termination followed repeated acts of insubordination by Plaintiff, numerous complaints from co-workers about Plaintiff, and determinations against Plaintiff by three different investigators. None of the investigators had any knowledge of Plaintiff's race, and the third determination led directly to his termination. Plaintiff's own internal complaints—none of which said anything about racial discrimination or harassment—were investigated by a fourth investigator, who found them unsupported by the facts.

<u>Boeing Hires Plaintiff (*See* 4-SER-828, ¶5)</u>

Boeing hired Plaintiff in February 2018, to work on an Industrial Engineering team assigned to the new 7777X airplane program. *Id*. At Boeing, Industrial Engineers develop, implement, and evaluate processes to optimize efficiency during aircraft production, often coordinating with other departments. 4-SER-827-28, ¶¶2-3. Industrial Engineers create timelines, schedules, and recovery plans to ensure that airplanes are built on schedule, using mathematical models and data to maximize the

4

use and scheduling of resources. 4-SER-827, ¶2. These engineers are expected to pivot in response to shifts in priorities, and to overcome commonplace hurdles like late parts and missing data. 4-SER-828, ¶4. The initial production of a new airplane program creates a particularly dynamic environment with frequently changing plans and priorities, requiring Industrial Engineers to act with limited resources and based on incomplete and changing data. *Id*.; 4-SER-839, ¶59. Plaintiff's position also requires high levels of collaboration, within and without the team. 4-SER-828-29, ¶¶3, 10.

For all but the first few weeks of Plaintiff's employment, his manager was Jeffrey Dillaman. 4-SER-828, ¶¶5-6. Mr. Dillaman managed the approximately 15 employees on Plaintiff's team, which included African, African-American, Asian, and Hispanic employees. *Id*. at ¶7. Mr. Dillaman was personally responsible for hiring some of the team, including two African-Americans. *Id*.

<u>Plaintiff Does Not Perform Well</u>

Almost immediately, Boeing employees began reporting problems with Plaintiff's performance. By the end of May 2018, five different employees had reported to Mr. Dillaman that Plaintiff provided poor

5

work product, failed to collaborate, and reacted defensively to feedback. 4-SER-829, ¶10. For example, in May 2018, Luis Mendez (Plaintiff's team leader at the time) reported that Plaintiff did not respond to direction regarding proper processes for a task. 4-SER-828, ¶8. Later that month, senior team leader John Cheshier and team leader Britanny Asahara reported that Plaintiff's work was slow and inaccurate. 4-SER-828-29, ¶9. When Mr. Dillaman provided coaching to Plaintiff, Plaintiff reacted dismissively and defensively. *Id*.

Plaintiff's performance deficiencies continued the next month. On June 13, 2018, Mr. Dillaman heard from team leader Asahara that an employee named Doug Lemmon (whose team Plaintiff was assigned to support) experienced "attitude problems" from Plaintiff. 4-SER-829, ¶11; 4-SER-847. On June 21, 2018, Lemmon sent an email to senior team leader Cheshier that "Someone needs to do something." 4-SER-829, ¶12; 4-SER-847. After Cheshier forwarded the email, Mr. Dillaman spoke with both men. *Id*. Mr. Dillaman learned that Lemmon was referring to Plaintiff's inability to work collaboratively and specifically to the following incident: while mechanics were adjusting the fit of a posted scheduling chart, Plaintiff walked up and ripped the chart down. *Id*.

On June 26, 2018, Cheshier emailed Dillaman again to report that Plaintiff is: unable to collaborate; frustrating to his assigned production team; reacting defensively to feedback; and not putting his work product in the required format. 4-SER-829, ¶13; 4-SER-851. Cheshier reported that Plaintiff is regularly, argumentative, sarcastic, and mocking, and sometimes simply "says no and walks off." *Id*.

On June 27, 2018, Mr. Dillaman met with Plaintiff, to deliver his mid-year performance review. 4-SER-830, ¶14. Mr. Dillaman found that, although Plaintiff met expectations in some areas, Plaintiff's performance required improvement in "three critical areas:" "Communication; Customer Satisfaction, and People Working Together." *Id*.; 4-SER-854-59. Mr. Dillaman wrote in the "Insights" section: "There are areas that need to improve to meet expectations at the end of the year (mostly in terms of taking direction and working effectively with others)." 4-SER-858. In the "Close-Out Insights" section, Mr. Dillaman stated: "Setondji is an intelligent and capable analyst. There were a few interpersonal challenges this year that led to his Performance Values falling below my expectations." *Id*.

With respect to the meeting itself, Mr. Dillaman reports that Plaintiff "was defensive and dismissive of this coaching and insisted he exceeded expectations in every category." 4-SER-830, ¶14. Plaintiff was so argumentative that Mr. Dillaman ended the meeting. *Id.*

Plaintiff's poor performance also attracted the attention of other Boeing managers. On July 17, 2018, Keven Wyeth (the manufacturing manager that Plaintiff was supposed to be supporting) emailed the following to Mr. Dillaman and to Boeing Director Paul Dernier: "Let's have a face to face regarding Setondji Nahum. . . There is some obvious tension and lack of working together that needs to be addressed." 4-SER-830, ¶15; 4-SER-861.

First Disciplinary Action

By August 2018, Plaintiff's repeated insubordination compelled Dillaman to request an investigation to determine whether discipline was warranted. 4-SER-830, ¶16. The investigation request was triggered by Plaintiff's refusal to comply with seven (7) requests—by team lead Paul Kurfess, team lead Asahara, and Mr. Dillaman—to complete a "Production Planning Change Request" (PPCR). *Id.*

A PPCR is a simple form that ensures shops transferring work are aligned. The process requires that, before the work is transferred, the Industrial Engineer supporting the outgoing shop obtain signatures from both the outgoing and receiving shop manufacturing teams. *Id*. at ¶¶16-17. Boeing requires a PPCR whenever work is moved from one airplane shop to another, unless the work is being moved to a team within the same Systems Installation shop and the same budget. 4-SER-831, ¶18.

On August 13, 2018, Kurfess emailed Plaintiff that two particular jobs should use the PPCR process. Plaintiff replied that a PPCR was not required. *Id*. at ¶19. Mr. Kurfess then reiterated his belief that a PPCR was required, and added Mr. Dillaman to the email string. *Id*.; 4-SER-876-79. On August 14, 2018, Mr. Dillaman specifically instructed Plaintiff to use a PPCR to transfer the work. 4-SER-831, ¶20. Plaintiff refused. *Id*. Mr. Dillaman again instructed Plaintiff to "process the PPCR for these jobs." *Id*.; 4-SER-881-84. Ms. Asahara also asked Plaintiff to prepare a PPCR, and then repeated the request when Plaintiff refused. 4-SER-831, ¶21; 4-SER-886-91.

The next day, Plaintiff transferred the work *without* a PPCR. 4-SER-832, ¶22; 4-SER-893-97. Asahara then transferred the work back to

Plaintiff, and instructed him to process the PPCR. 4-SER-832, ¶¶22-23; 4-SER-886-903. Plaintiff responded by continuing to disagree with the instruction. 4-SER-832, ¶23; 4-SER-886-903.  Plaintiff then again transferred the work *without* a PPCR. 4-SER-832, ¶24; 4-SER-893-97.

Mr. Dillman sent another email, instructing Plaintiff: "Yes a PPCR is required. . . Please process this PPCR this morning." 4-SER-832, ¶25; 4-SER-881-884.  Mr. Dillaman also asked Human Resources to investigate whether disciplinary action was warranted. 4-SER-832, ¶28.

Boeing human resources representative Tami Foxe investigated the matter. Foxe concluded that Plaintiff's refusal to follow directions to complete the PPCR warranted a Corrective Action Memo (CAM). 4-SER-820-21,¶¶3, 7; 4-SER 833, ¶¶29-30. Ms. Foxe made that decision without any knowledge of Plaintiff's race. 4-SER-821, ¶4; 5-SER-1088-89.

Mr. Dillaman delivered the CAM to Plaintiff on September 4, 2018. 4-SER-833, ¶31.

<u>Second Disciplinary Action</u>

On August 20, 2018, Asahara reported to Mr. Dillaman that Plaintiff was "very disrespectful" in response to coaching efforts by her and another lead, Eric Strunk. *Id*. at ¶32. Asahara reported similar

behavior by Plaintiff on August 29, 2018: "[E]ach time I tried to explain he would either interrupt me or start doing things on his computer. . . Our frustration is that he acts like he doesn't know why we don't understand his [work] but when we try to explain it he either doesn't listen or just gets up and leaves." 4-SER-833-34, ¶33; 4-SER-916. Mr. Dillaman then attempted to coach Plaintiff on ways to improve his substantive work and his communications. 4-SER-834, ¶34. "Plaintiff dismissed this feedback." *Id*.

Plaintiff similarly refused to accept simple directions on October 31, 2018. Ms. Asahara asked Plaintiff to coordinate movement of work statements between two shops and to move a particular work statement. *Id*. at ¶35. Plaintiff resisted, including by saying, "There is too much confusion right now. I'll take a look at this task once the dust settles." *Id*. Mr. Dillaman felt compelled to intervene with an email: "Setondji, it is your job to work on sorting out the confusion to come up with the right solution. The dust is never going to settle. . . Work with your leads as necessary." *Id*. Plaintiff responded to his manager: "Thanks for sharing. I have already discussed with the shop yesterday. We understand the

chaos and do not plan on wasting our time beating a dead horse or generate (sic) more confusion." *Id*.; 4-SER-918-20.

On December 17, 2018, Ms. Asahara asked each team member to create a chart using the Microsoft Project computer program, to reflect progress toward certain milestones. 4-SER-834-35, ¶¶37-38. The next day, Mr. Kurfess contacted Mr. Dillaman, reporting that Plaintiff had refused instructions to use Microsoft Project and had stated he would not attend a scheduled meeting. 4-SER-835, ¶39. Kurfess reported that Plaintiff told him "he didn't need to and he'd already done his research and put the data in a format that he could talk when needed." *Id*. Plaintiff never completed the project as instructed. *Id*. at ¶40.

Plaintiff's insubordination continued on January 4, 2019, in two separate incidents. First, shortly before a previously scheduled meeting was to start, Mr. Cheshier asked Plaintiff to attend. *Id*. at ¶41. Although Plaintiff then stood as if he was going to attend, Plaintiff sat back down (after Mr. Cheshier left the area) and refused to attend the meeting. *Id*. Second, Mr. Kurfess asked Plaintiff to build a plan to complete certain tasks by January 14, 2019. *Id*. at ¶42. Plaintiff responded: "Fantastic! It's just unrealistic and it is not going to happen. Period." *Id*.; 5-SER-938-43.

12

Mr. Dillaman interceded to point out that, if Plaintiff thought the deadline was unrealistic, he should have responded by identifying additional resources needed to meet the deadline. 4-SER-836, ¶43. Plaintiff responded by saying he could put together a "crap" plan. *Id*. Mr. Dillaman then summarized the conversation in an email to Plaintiff, and stated: "[I]t is not acceptable to just say my ask is unrealistic and to go talk to someone else. It is your role to take ownership of your work statement and assist them . . . I am concerned that I haven't seen this same level of effort from you, and I want to be clear on the type of work that I expect my employees to do." *Id*. At ¶44; 5-SER-938-43. Plaintiff then responded: "Thanks for the feedback but I strongly disagree. . . Whether you like it or not I have done my job. Quite frankly I have done my job despite you and your team. . . Setondji does not believe in Gold Plating." 4-SER-836, ¶45; 5-SER-938-43.[1]

On January 7, 2019, Mr. Dillaman then requested another human resources investigation into Plaintiff's conduct. 4-SER-836, ¶46. The matter was assigned to Timothy Saner. Mr. Saner investigated and concluded that Plaintiff's refusal to complete assigned tasks and

---

[1] Plaintiff is here referring to himself in the third-person.

dismissive responses to feedback warranted corrective discipline. 4-SER-836-37, ¶¶47-49.

Plaintiff admits that Mr. Saner, who he never met, had no discriminatory motive against him. 5-SER-1112. Mr. Dillaman issued a second CAM to Plaintiff on February 7, 2019. 4-SER-837, ¶50.

### Third Disciplinary Action Results in Termination

Mr. Dillaman instructed Plaintiff on January 15, 2019 to write another PPCR. 4-SER-837-38, ¶52. Plaintiff's response was to dispute that a PPCR was needed. *Id*. When Mr. Dillaman explained why a PPCR was needed, Plaintiff's response again was to dispute that a PPCR was needed. *Id*. Plaintiff told his boss: "We actually do not and I am sure you do know that." *Id*. When Mr. Dillaman told Plaintiff that Mr. Kurfess would write the PPCR, Plaintiff responded: "You just chose to get involved with a misguided power play as usual." *Id*.

Plaintiff questioned his superior's instructions again on January 17, 2019. Mr. Dillaman told his entire team, including Plaintiff, to create a recovery plan to get production back on schedule. 4-SER-838, ¶53. Plaintiff provided a table with information that appeared inaccurate to Mr. Dillaman. *Id*. When Mr. Dillaman questioned Plaintiff's

methodology, Plaintiff responded: "It makes no sense to even put together a recovery plan based on the lack of data. You got the best estimate." *Id*.

Mr. Dillaman explained: "Please keep in mind that you will always have a lack of data, but you have more than enough data to you to make educated guesses." *Id*. Plaintiff responded: "You have been provided with the best estimate and I am starting to wonder why I am even responding at this point." *Id*.

On March 13, 2019, Mr. Dillaman instructed Plaintiff to perform specific tasks. 4-SER-839, ¶57. On March 22, Mr. Dillaman emailed Plaintiff about several deficiencies in Plaintiff's work product. *Id*. at ¶58. Plaintiff responded: "Thanks for the feedback but yet again I found it hard to believe your statements. . . Quite frankly I am very proud of my work given the limited resources and logistics issue that I navigate on a daily basis." *Id*. at ¶ 59.

Plaintiff again failed to perform when, on March 19, 2019, team member Austin Glavin asked Plaintiff to provide estimated recovery completion dates for approximately 20 jobs (listed in an attached spreadsheet) that had to be completed prior to April 4, 2019. 4-SER-839-40, ¶60. Instead, Plaintiff sent a new spreadsheet of all the nearly 80

15

open jobs on the project. 4-SER-840, ¶61. When Mr. Dillaman interceded to explain that Mr. Glavin wanted a particular Estimated Complete column in his own spreadsheet updated for the 20 particular jobs critical to the deadline, Plaintiff insisted he had done what Mr. Glavin asked. *Id*. at ¶¶62-63. Mr. Dillaman then simply told Plaintiff to do as he (Mr. Dillaman) had described. *Id*. at ¶63. Instead, Plaintiff again sent his own spreadsheet, listing 57 jobs, none of which had estimated completion dates prior to April 4. *Id*. at ¶64.

After shop lead Steve Simpkins sent an email about the limited resources on his Doors team, Plaintiff proceeded to use the email as a response when others asked him for estimated completion dates for recovery plans related to Doors. 4-SER-841, ¶¶65-66. He also used the email offensively, telling Mr. Dillaman, Glavin, Industrial Engineering manager Samantha Jarema, and Asahara that their targeted completion dates "may not be realistic." *Id*. at ¶66. When Ms. Asahara responded by asking Plaintiff, "Is there a plan to get those doors tested? What will the doors team be doing. . .," he responded only by resending Mr. Simpkins original email. *Id*. at ¶67. Ms. Asahara replied: "Please stop forwarding

16

me Steve Simpkins' email. Tomorrow we would like to see a plan with cycling for the doors team." *Id.*

Due to his frustration with Plaintiff's repeated failures to perform and defensive responses, Mr. Dillaman on March 22, 2019 requested another investigation. *Id.* at ¶68. The matter was assigned to Kim Lima for investigation. *Id.* at ¶69.

During the time of Mr. Kim's investigation, Plaintiff's performance problems continued. For example, on March 22, 2019, Mr. Simpkins emailed:

> I'm through with Setondji V. Nahum. It has become quite apparent to me that he has made no effort to even research the door package to any level of understanding. At this point he is a waste of my time, that I am quite short of these days. I resent the fact that I have been made to deal with an obvious problem child for the IE world, that you have saddled [me] with one of the most difficult packages to manage. . . I really don't think there is any package he could handle in S&I . . . Every Sat I have put in for IE help has been an argument. And then someone else would have to get involved to fix it correctly. . . I am not going to do his job for him. Give me someone competent . . !

4-SER-843 ¶74; 5-SER-1068.

On March 27, 2019, Mr. Wyeth emailed Mr. Dillaman after Plaintiff provided inaccurate forecasted completion dates, begging: "Jefffff, Please oh please stop the bad info that is spreading. All he has to do is look over

17

his right shoulder and ask the manager the status." 4-SER-843 ¶75; 5-SER-1070-74.

On April 4, 2019, Mr. Dillaman provided Plaintiff specific instructions as to how to meet Ms. Jarema's requests. Instead of incorporating these suggestions, Plaintiff asserted that what he provided "does meet our priorities" and complained the priorities "change every time we meet/speak." Mr. Dillaman clarified that the "priorities change every time we speak because we are in a dynamic airplane startup environment." Plaintiff responded by resending his original, unrevised files. 4-SER-842, ¶72.

Mr. Lima concluded that Plaintiff repeatedly failed to comply with management expectations and that discipline was warranted. 4-SER-736, ¶12. Mr. Lima made this decision without any knowledge of Plaintiff's race. 4-SER-735, ¶4. Plaintiff admits that Mr. Lima, who he never met, had no discriminatory motive against him. 5-SER-1113-14. Mr. Lima notified Mr. Dillamon of the determination on May 10, 2019. 4-SER-844, ¶77.

Pursuant to Boeing's progressive disciplinary policy, Plaintiff's third corrective action resulted in his termination. *Id.*; 4-SER-736-37,

¶13. Mr. Dillaman delivered the termination to Plaintiff on May 13, 2019. 4-SER-844, ¶78.

<u>Plaintiff's internal complaints omit any reference to race.</u>

Between the dates that Mr. Lima began and concluded the third investigation into Plaintiff's performance deficiencies, Plaintiff himself submitted three internal complaints to Boeing's Ethics team. 4-SER-765-66, ¶¶3-7; 4-SER-769-90. None of these three complaints—all dated April 10, 2019—alleges any race discrimination. Instead, Plaintiff complained that Ms. Foxe's September 2018 finding, Mr. Saner's February 2019 finding, and Mr. Dillaman's March 2019 submission were all unwarranted and that his work performance was satisfactory. *Id*.

The internal complaints were assigned for investigation to Carl Weaver of Boeing's Corporate Investigations team. 4-SER-765-66, ¶¶3-9. On April 19, 2019, Plaintiff provided a written statement to Mr. Weaver. 4-SER-766, ¶8; 4-SER-792-94. The statement again focused on Plaintiff's self-assessment of his work quality and contained no allegation of race discrimination. *Id*. Plaintiff also submitted more than 30 emails and documents to Mr. Weaver. *Id*.

On May 8, 2019, after reviewing the complaints, statement and materials submitted, Mr. Weaver concluded the evidence did not substantiate Plaintiff's claims of unwarranted discipline. 4-SER-766, ¶¶8-9. Mr. Weaver did not know Plaintiff's race. 4-SER-765, ¶3.

<u>Proceedings in the district court.</u>

On July 18, 2019, Plaintiff filed a complaint against Boeing and Mr. Dillaman in the United States District Court for the Western District of Washington. The seven-count complaint alleged: (1) race discrimination pursuant to Title VII; (2) retaliation for acts while employed at Boeing, pursuant to Title VII; (3) wrongful termination pursuant to 25 CFR §11.448; (4) racial harassment pursuant to Title VII; (5) defamation pursuant to 28 U.S.C. §4101; (6) conspiracy pursuant to 18 U.S.C. § 241 and Title VII; and (7) retaliation based on acts performed for previous employers, pursuant to 25 CFR §11.448 and Title VII. 7-SER-1512-28.

On December 17, 2019, the district court dismissed with prejudice: Count II (for retaliation based on Plaintiff's actions while at Boeing); Count III (for alleged wrongful termination); Count VI (conspiracy); and Count VII (retaliation based on Plaintiff's actions performed at other employers). 1-SER-25-37. The district court also dismissed Count V

20

(defamation), but with leave to amend. *Id*. Plaintiff replead his defamation allegations in an Amended Complaint, filed January 9, 2020, claiming that allegedly false statements by Boeing about his performance caused his termination by Boeing. 6-SER-1246-1302.

On October 2, 2020, Boeing and Dillaman moved for summary judgment. 4-SER-729-935; 5-SER-937-1164. Plaintiff responded on October 23, 2020. 2-SER-80-102.[2] Boeing and Dillaman replied on November 6, 2020. 2-SER-60-79. On December 28, 2020, the district court granted summary judgment on all claims in favor of Boeing and Dillaman and against Plaintiff. 1-SER-3-24.

This appeal followed.

---

[2] Plaintiff filed his own motion for summary judgment on October 2, 2020, to which Boeing responded on October 19, 2020. 3-SER-451-472.

## SUMMARY OF ARGUMENT

From the beginning of his employment at Boeing, Plaintiff was insubordinate to his supervisors, failed to complete assignments as directed, and unable to work together with colleagues.

After three corrective actions—each of which was vetted by a different human resources investigator with no knowledge of Plaintiff's race—Boeing terminated Plaintiff's employment. A fourth investigator—who also had no knowledge of Plaintiff's race—found no basis for Plaintiff's internal complaint that he was treated unfairly.

Plaintiff nonetheless filed this lawsuit, one of three he has filed and lost against various defendants in the last five years. Although the district court agreed to appoint three lawyers to represent him in this case, Plaintiff refused to work with any of them and proceeded pro se.

The district court dismissed most of Plaintiff's allegations pursuant to Rule 12(b)(6) and granted summary judgment against Plaintiff on all remaining counts. The district court's orders should be affirmed. Plaintiff failed to state a claim regarding the dismissed counts and failed to support his remaining claims with any evidence. In fact, the record demonstrates that Plaintiff's claims and this appeal lack merit.

## ARGUMENT

I.  The district court's order granting defendants summary judgment.

    A.  Standard of review.

This Court reviews an order granting summary judgment *de novo*, applying the same standard as the district court, and may affirm the order on any ground supported by the record. *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

    B.  Legal standard for granting summary judgment.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case, and a dispute is "genuine" only if the evidence is such that a reasonable trier of fact could resolve the issue in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). A party opposing summary judgment must set forth specific admissible evidence to show a genuine material dispute; mere allegation, speculation, and opinion do not create a factual dispute for purposes of summary judgment. *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016);

*Schuler v. Chronicle Broad.,* 793 F.2d 1010, 1011 (9th Cir. 1986).[3]

    C.    <u>Title VII Race Discrimination (Count I)</u>

        1.    <u>The *McDonnell Douglas* framework.</u>

Plaintiff's Title VII claim—*i.e*, that race discrimination caused his termination—is subject to the familiar *McDonnell Douglas* burden shifting analysis.

Under that framework, Plaintiff must first demonstrate he can meet all the elements of his prima facie case. *Hawn*, 615 F.3d at 1155. If, and only if, Plaintiff can establish a prima facie case, then the burden of production shifts to Defendants to articulate a legitimate, non-

---

[3] Plaintiff cites outdated law from the Eighth Circuit to suggest the summary judgment rules are different in employment discrimination cases. They are not. "Summary judgment procedure is . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp v. Catrett*, 106 S.Ct. 2548, 2555 (1986) (*quoting* Fed. R. Civ. P. 1). The Supreme Court has also clarified that courts do not "treat discrimination differently from other ultimate questions of fact." *Reeves v. Sanderson Plumbing Prods., Inc*., 120 S.Ct. 2097, 2109 (2000) (internal punctuation and citation omitted). Based on these decisions, the Eighth Circuit itself long-ago clarified that there is no "discrimination case exception" to the application of summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). *See also Chapman v. AI Transp*., 229 F.3d 1012, 1026 (11th Cir. 2000) (*citing Reeves*).

discriminatory reason for the discharge decision. *Id*. If Defendants meet that burden, the burden shifts back to Plaintiff to demonstrate that Defendants' stated reason is a mere pretext for intentional discrimination. *Id*. At all times the burden of demonstrating intentional race discrimination remains on Plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 113 S.Ct. 2742, 2747 (1993).

2. <u>Plaintiff cannot establish even a prima facie case.</u>

To meet his initial burden, Plaintiff must provide evidence showing the elements of his prima facie case: (1) that he is a member of a protected class; (2) that he was qualified for his position and performing his job satisfactorily; (3) that he experienced an adverse employment action; and (4) that similarly situated individuals outside the protected class were treated more favorably, or other circumstances giving rise to an inference of discrimination. *Hawn*, 615 F.3d at 1156.

Plaintiff cannot meet his initial burden. It is undisputed Plaintiff is Black and was discharged after receiving three CAMs. Plaintiff, however, has no evidence showing he performed his job satisfactorily (element 2) and no evidence of disparate treatment (element 4). Each failure of proof is independently fatal to his claim.

a.  <u>Plaintiff was not satisfactorily performing his job.</u>

To survive summary judgment, Plaintiff must produce evidence that he was satisfactorily performing his job. *Weil v. Citizens Telecom Serv. Co., LLC*, 922 F.3d 993, 1003 (9th Cir. 2019).

Instead, the record reflects overwhelming evidence of Plaintiff's insubordination, failure to perform assigned tasks in a timely manner, and inability to work with others.  Mr. Dillaman's overall performance evaluation reflected a failure to meet expectations, chiefly identifying as problematic Plaintiff's inability to take direction and to work with colleagues. 4-SER-857-58. These performance deficiencies continued throughout Plaintiff's employment as reflected in numerous declarations, contemporaneous emails from multiple individuals, and investigatory determinations.  4-SER-735-94; 4-SER-820-935; 5-SER-937-1076.

These deficiencies are problematic in any job, and they are fatal here where the job necessitates collaboration in a workplace with quickly changing demands and information. 4-SER-828-29, ¶¶ 3-4, 10. *See Ochs v. Eugene Emeralds Baseball Club, Inc.*, 774 F.App'x 1026, 1029 (9th Cir. 2019) (finding employee reprimanded multiple times for being disrespectful to managers and coworkers could not demonstrate prima

facie case); *Hodges v. CGI Fed. Defense & Intelligence*, 727 F.App'x 236, 238 (9th Cir. 2018) (finding failure to establish prima facie case by employee who was the subject of complaints, evaluations, and discipline for argumentativeness, unprofessionalism, and interpersonal relationship issues).

Moreover, three separate investigations (with three different investigators) confirmed that Plaintiff's workplace deficiencies warranted a CAM, and a fourth failed to substantiate Plaintiff's claims that prior discipline was unwarranted. 4-SER-735-36, ¶¶3, 12; 4-SER-755-624; 4-SER-820-21, ¶¶3, 7; 4-SER-824-26; 4-SER-832-33, ¶¶28-29; 4-SER-836-37, ¶¶46-47; 4-SER-841, ¶¶68-69.

Against this evidence, Plaintiff offers only his own subjective claims that his performance was satisfactory and Boeing's findings unwarranted. But Plaintiff's self-assessment is not enough to survive summary judgment. *Hodges*, 727 F.App'x at 238 (plaintiff's declaration as to his own performance insufficient); *Weil*, 922 F.3d at 1003-04 (finding plaintiff's self-assessment does not create a material dispute regarding the second element); *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 704 (4th Cir. 2023) (finding that to meet this element, "[i]t is the perception of

the decision maker which is relevant, not the self-assessment of the plaintiff").

        b.    <u>Plaintiff has no evidence of disparate treatment</u>.

Even if he had provided evidence of satisfactory performance, Plaintiff cannot establish the fourth element of his prima facie case: Plaintiff has no evidence of disparate treatment or other evidence creating an inference of discrimination. *Hawn*, 615 F.3d at 1156.

Plaintiff has failed to identify a single comparator who was treated more favorably than him under similar circumstances, much less provide evidence of such a comparator. There are none. 4-SER-737, ¶14; 4-SER-796, ¶9; 4-SER-821, ¶8; 4-SER-844, ¶79.

Plaintiff similarly has failed to provide any other evidence that might create an inference of discrimination. To the contrary, the evidence shows that each disciplinary action was investigated twice (first, at Mr. Dillaman's request and second pursuant to Plaintiff's internal complaint). Furthermore, the evidence shows the investigators had no knowledge of Plaintiff's race when they made their decisions. 4-SER-735, ¶4; 4-SER-765, ¶4; 4-SER-821, ¶4. A decisionmaker "could not have been motivated by knowledge it did not have." *Anthony v. Trax Int'l Corp.*, 955

28

F.3d 1123, 1130 (9th Cir. 2020) (internal punctuation and citation omitted). Accordingly, race cannot have played any role in their findings. *See also Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987) (a decision maker cannot racially discriminate without knowledge of plaintiff's race). Indeed, Plaintiff admits the investigators had no racial motive against him. 5-SER-1088-89; 5-SER-1110-16.

### 3.  <u>Plaintiff has no pretext evidence</u>.

Even if Plaintiff could establish a prima facie case, Defendants would nonetheless be entitled to summary judgment. Plaintiff cannot establish that Boeing's explanation for his termination—his unsatisfactory performance due to insubordination, disruptive behavior, and failure to follow directions—is a mere pretext for intentional race discrimination.

Indeed, the evidence supports only the opposite conclusion.

First, the record is replete with evidence that numerous Boeing employees found Plaintiff's work unsatisfactory over months and months of employment. Plaintiff has no evidence to suggest that mountainous record was feigned, much less the "specific, substantial evidence" required to demonstrate pretext. *See Buhl v. Abbott Lab*., 817 F.App'x

408, 410-11 (9th Cir. 2020), *Steckl v. Motorola*, 703 F.2d 392, 393 (9th Cir. 1983). Plaintiff has not pointed to any similarly situated employee treated more favorably, and his self-assessment cannot create a disputed material fact about his performance. *Buhl*, 817 F.App'x at 410-11; *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996); *Weil*, 922 F.3d at 1003.

Second, Plaintiff's termination resulted from his insubordination, disruption, and other performance issues after he received his third disciplinary action for those issues. 4-SER-736-37, ¶13; 4-SER-844, ¶77. Those three disciplinary actions were not issued until they were determined to be warranted by three different investigators. 4-SER-736, ¶12; 4-SER-821, ¶7; 4-SER-833, ¶30; 4-SER-837, ¶49; 4-SER-844, ¶77. A fourth investigator determined Plaintiff could not substantiate his claim the discipline was unwarranted. 4-SER-766, ¶9. None of those investigators even knew Plaintiff's race, and Plaintiff has no evidence any of them were motivated by his race. 4-SER-735, ¶4; 4-SER-765, ¶4; 4-SER-821, ¶4; 5-SER-1088-89; 5-SER-1110-16. Moreover, Mr. Dillaman, who requested the three investigations, himself has a record of hiring employees of Plaintiff's race. 4-SER-828, ¶7. *See Schiff v. City and Cty. of*

30

*San Francisco*, 528 F.App'x 743, 746 (9th Cir. 2013) (finding no pretext where evidence shows decisionmaker treated others in plaintiff's protected class favorably).

Thus, on the question of race-based motive in the decision to terminate Plaintiff's employment, the only evidence demonstrates there was none. *See Anthony*, 955 F.3d at 1130; *Robinson*, 847 F.2d at 1316. The district court correctly granted summary judgment on Count I.[4]

D.   Title VII Race Hostile Environment (Count IV).

The district court also correctly granted summary judgment regarding Plaintiff's Title VII hostile environment, or "harassment," claim.

1.   The elements of Plaintiff's hostile environment claim.

That claim requires Plaintiff to provide evidence that: (1) he was subjected to conduct of a racial nature; (2) the conduct was unwelcome; and (3) that the conduct was so severe or pervasive as to alter the conditions of his employment and create an abusive work environment. *Campbell v. Hawaii Dept. of Educ.*, 892 F.3d 1005, 1016-17 (9th Cir.

---

[44] All Title VII claims against Mr. Dillaman fail for the additional reason that there is no individual liability under Title VII. *Martinez v. Spencer*, 771 F.App'x 403 (9th Cir. 2019).

2018). Where the harasser is a co-worker, the employee must also show the employer knew or should have known of the harassment but did not take adequate steps to address it. *See Choi v. Mabus*, 617 F.App'x 669, 670 (9th Cir. 2015).

In determining whether there is an actionably abusive workplace, courts consider the frequency of any discriminatory conduct, the severity of any such conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance. *Campbell*, 892 F.3d at 1017. The environment must be both subjectively and objectively abusive, meaning that both plaintiff (subjectively) and a reasonable person (objectively) would find the environment abusive. *Westendorf v. West Coast Contractors of Nevada, Inc*., 712 F.3d 417, 421 (9th Cir. 2013); *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

These standards for judging hostility are intended to be "sufficiently demanding to ensure that Title VII does not become a 'general civility code,' [and] "[p]roperly applied they will filter out complaints attacking the ordinary tribulations of the workplace, such as

32

the sporadic use of abusive language, . . . jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 118 S.Ct. 2275, 2283-84 (1998).

> 2.    Plaintiff cannot show a racially hostile environment.

Plaintiff cannot point to *any* racial conduct he experienced at Boeing, much less to any severe or pervasive racial conduct that a reasonable person might find abusive.

> a.    No evidence of racial conduct.

Without any evidence tying the complained-about conduct to race, Plaintiff's claim of racial harassment fails. *See Spillane v. Shulkin*, 692 F.App'x 843, 844 (9th Cir. 2017); *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108-09 (9th Cir. 2008).

Plaintiff relies primarily on terms he alleges he heard in the workplace. Plaintiff alleges that he was "often" referred to as "problem child," and also referred to as a "bulldog," a "fighting dog," "dog," "rat," a "carpet to be stepped on with approval from management," and a "slave worker." P. Br. 5-6, 10, 15, 19, 22. There is, however, no evidence any of these references had any racial motive. Indeed, none of these terms has any facially racial component, and only "slave worker" is even historically suggestive.

Plaintiff's mere assumptions that these race-neutral terms were used in a racially derogatory manner is legally insufficient to survive summary judgment. *Loomis*, 836 F.3d at 997 (speculation cannot defeat summary judgment); *Evans v. Hillman Grp*., 2022 WL 4621452, *7 (S.D. Ohio. Sept. 30, 2022) ("subjective belief and speculation that the term must have been derogatory . . . is insufficient."); *Robertson v. Dodaro*, 767 F.Supp.2d 185, 194 (D.D.C. 2011) ("It is the plaintiff's burden to provide evidence beyond his or her own subjective assertions of discrimination suggesting that a facially neutral term or phrase was, in fact, discriminatory.").

Not only does Plaintiff have no evidence to support his assumptions of racial motive, the actual evidence shows the non-racial context in which the terms were used. For example, despite Plaintiff's allegation that he was "often" called "problem child," the record reflects only a single use of the term, in an email from his co-worker, Steve Simpkins, to Mr. Dillaman. That single email contains only Mr. Simpkins's thoughts about Plaintiff's work, with no reference to his race.

> I'm through with Setondji V Nahum. It has become quite
> apparent to me that he has made no effort to even research
> the door package to any level of understanding. At this point
> he is a waste of my time, that I am quite short of these days.

> I resent the fact that I have been made to deal with an obvious problem child for the IE world . . .

*See* ER-164; 5-SER-1068.

Plaintiff himself admits that ""bulldog," and "fighting dog" and "dog" were used by co-workers to describe his resiliency, not his race. 5-SER-1091-92. Regarding the alleged comment about a "carpet," Plaintiff admits: (1) it occurred only one time; (2) that he concluded it referred to him only because it was said near him; and (3) that his belief it was racial is based only on the fact it was negative. 5-SER-1101-04. In other words, Plaintiff must pile speculation on speculation to reach his conclusion the term (used only once) was racially motivated. Speculation is not evidence. *United States v. Reyes*, 838 F.App'x 276, 278 (9th Cir. 2021). As regards the "slave worker" comment, Plaintiff admits: (1) it occurred only in one conversation; (2) it might not have been about him, which is why he did not report it; and (3) it occurred in the context of "we're just told to work the damn thing until we . . . break it," to which someone responded "slave worker, oh, we got plenty of those." 5-SER-1104-09.

Thus, there is no evidence Plaintiff experienced any racial

comments.[5]

Plaintiff also complains about the corrective actions he received, and the fact Boeing asked him to sign a performance evaluation he found discriminatory. P. Br. 9. However, disagreement with performance-related actions does not constitute actionable harassment, particularly when there is no evidence the actions were racially motivated. *See Spillane*, 692 F.App'x at 844; *Abram v. City and Cty. of San Francisco*, 357 F.App'x 142, 144 (9th Cir. 2009); *Caldwell v. State of Washington*, 278 F.App'x 773, 775 (9th Cir. 2008); *Surrell*, 518 F.3d at 1108-09; *Vasquez*, 349 F.3d at 642-43. Here, the undisputed evidence shows that Plaintiff's speculation about motive is demonstrably false. For example, Mr. Dillaman asked every employee, regardless of race, to sign his or her evaluation as an acknowledgement of receipt. 4-SER-834, ¶36; 4-SER-922-23.

Plaintiff also complains about being assigned mind numbing repetitive tasks. P. Br. 10. Plaintiff did not present these allegations in his opposition to Defendants' summary judgment motion, and thus he

---

[5] To the extent Plaintiff suggests there were other comments, the record does not reflect them.

cannot raise it now on appeal of the summary judgment order. *Mvuemba v. Cty. of Los Angeles*, 678 F.App'x 536, 537 (9th Cir. 2017). Even if he had not thereby forfeited the point, Plaintiff has no evidence that his alleged assignments were in any way racially motivated.

      b.   <u>No evidence of severe or pervasive racial conduct.</u>

Even if all the alleged conduct is assumed to be racially motivated, Defendants are still entitled to summary judgment. The alleged conduct is neither severe nor pervasive enough that a reasonable person would find it abusive. Indeed, this Court has affirmed summary judgment for defendants in the face of far more egregious conduct. *See Robello v. Mandalay Corp.*, 740 F.App'x 607 (9th Cir. 2018) (plaintiff was "sexually assaulted" by a co-worker who "grabb[ed] her breasts"); *Harris v. Sutton Motor Sales & RV Consignments Corp.*, 406 F.App'x 181, 182-83 (9th Cir. 2010) (three racial comments, including being called "nigger" twice, not "severe or pervasive enough"); *Stevens v. Cty. of San Mateo*, 267 F.App'x 684 (9th Cir. 2008) (*affirming* 2006 WL 581092 (N.D. Cal. Mar. 7, 2006) (comments such as "old barking dog" and told "you're my nigger); *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634 (9th Cir. 2003) (plaintiff told he had "a typical Hispanic macho attitude" and that he should transfer because

"Hispanics do good in the field.").

### c. No evidence of Boeing's negligence.

Furthermore, after eliminating the CAMS (disagreement with discipline is not racial harassment), the claim about being asked to sign the evaluation (discredited as racially motivated), and the assignments (forfeited), what is left are the comments by Plaintiff's co-workers. Even if those comments were racial and severe or pervasive (which they are not), Plaintiff has failed to show that Mr. Dillaman or other Boeing managers knew or should have known about them. Indeed, even when Plaintiff filed internal complaints, he made no mention of any racially based harassment. 4-SER-844, ¶81; 5-SER-1090-1109.

Accordingly, summary judgment on Count IV should be affirmed.

### E. Defamation (Count V)

The district court also correctly granted summary judgment regarding Plaintiff's defamation claim.

### 1. The elements of a defamation claim.

For his Washington defamation claim to survive summary judgment, Plaintiff must provide evidence of: (1) a false statement; (2) published without privilege; (3) at the fault of defendant; and (4) that

results in damages. *Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936, 944 (9th Cir. 2013) (*citing Duc Tan v. Le*, 300 P.3d 356, 363 (Wash. 2013)).[6]

2. Plaintiff has no evidence to support his claim.

a. The statements are not false.

Plaintiff's defamation claim relies primarily on statements about his poor performance in Boeing's CAMs and in communications about those CAMs to TALX UCM Services, Boeing's agent for handling Plaintiff's unemployment claim. 4-SER-729-30, ¶¶3-4. Plaintiff cannot, however, show any of these statements were false. Even if he could, Plaintiff cannot show the statements were published outside of the privilege for intra-corporate communications.

With respect to falsity, Plaintiff must show that the statements in

---

[6] Plaintiff's Amended Complaint purports to assert a defamation claim pursuant to federal and Washington state law, but the only federal basis asserted—28 U.S.C. §4101(1)—is a purely procedural statute that defines defamation for purposes of recognizing foreign defamation judgments. *See* 6-SER-1249. "[T]here is no federal common law or federal statutory cause of action for defamation." *Miller v. Sawant*, 2022 WL 17092791, *2 (W.D. Wash. Nov. 21, 2022). Even if there was, the district court dismissed Plaintiff's purported federal defamation claim prior to summary judgment. 5-SER-1183, n.5. Plaintiff has failed to address that dismissal on appeal, thus forfeiting the issue. *Brown v. City of Los Angeles*, 521 F.3d 1238, 1242 (9th Cir. 2008).

question were substantially untrue—*i.e.*, that the gist of the alleged defamatory statement is false. *Mohr v. Grant*, 108 P.3d 768, 773-74 (Wash. 2005). Indeed, so long as the portion of the statement that carries its gist, its "sting," is true, the statement is not actionable even if some part of might be literally untrue. *Id.*

Plaintiff cannot meet his burden. Defendants provided the district court with an abundance of evidence showing that Plaintiff was repeatedly insubordinate and otherwise failed to comply with management's directions, as stated in the CAMs. To avoid summary judgment, Plaintiff had the initial burden of presenting evidence disputing those statements. *Loomis*, 836 F.3d at 997 (9th Cir. 2016); *Schuler,* 793 F.2d at 1011.

Instead of providing such evidence of falsity, Plaintiff merely repeated (and repeats again in this Court) his allegations that the CAMs were "fictitious" and that his performance was satisfactory. But allegations are not evidence, no matter how often repeated. *Id.* Furthermore, Plaintiff's references to the record do not support his conclusions of falsity. For example, ER-99-109 reflects Mr. Saner's investigation, including Plaintiff's assertions, but it contains no evidence

demonstrating the falsity of Mr. Saner's conclusion in the second CAM.

### b.    The statements are privileged.

Even if Plaintiff could show the required falsity, he cannot overcome the fact that the only publication he alleges is privileged. Washington law protects statements made by one corporate employee to another, and to its agents. *Armijo v. Yakima HMA, LLC*, 868 F. Supp.2d 1129, 1139 (E.D. Wash. 2012); *Doe v. Gonzaga Univ.*, 24 P.3d 390 (2001), *rev'd on other grounds*, 536 U.S. 273 (2002). Furthermore, statements by Boeing and/or TALX to the Washington ESD itself are absolutely privileged. RCW 4.24.510.

Plaintiff provides no legal argument or authority in his opening brief to suggest the communications at issue are not privileged, thus forfeiting the issue. *Brown*, 521 F.3d at 1242. Even if he had attempted an argument, the only way to overcome the privilege for intra-corporate communications is through evidence of actual malice. *Armijo*, 868 F. Supp.2d at 1139. That requires more than Plaintiff's personal denial of the truth of the statement. *Herron v. Tribune Pub. Co.*, 736 P.2d 249 (1987). Instead, Plaintiff must present evidence "focusing on the defendant's belief in or attitude toward the truth of the statement."

41

*Herron v. KING Broad. Co.*, 746 P.2d 295, 302 (1987), *decision clarified on reh'g*, 776 P.2d 98 (1989).

Because Plaintiff provides no evidence any statements were made with reckless disregard for the truth, he cannot demonstrate any statements lost their privileged nature.

### c.  Plaintiff's allegations regarding his laptop.

Plaintiff also fails with regard to his only other purported basis for his defamation claim—his allegation that Defendants stated about him, "[u]pon his termination, he utilized his laptop to send an email to an unknown source with an attachment." *See* P. Br. 25.

First, there is no evidence of falsity. During the termination meeting with Plaintiff, Mr. Dillaman observed and then reported what appeared to be Plaintiff emailing a confidential company document from his company computer. 3-SER-443, ¶5. Although the ensuing forensic investigation found no evidence Plaintiff used his Outlook account for such an email, it did not preclude the possibility Plaintiff sent such an email using a web-based app that would not have been revealed by the investigation. *See* 3-SER-501. Plaintiff has provided no evidence he did not. Second, even if the statement was false, there is no evidence it was

published other than within Boeing or made with actual malice. In other words, any such statement is privileged. Third, even if the statement was false and unprivileged, there is no evidence the internal publication resulted in any damages. Plaintiff had already been terminated, and he provides no evidence of any other form of damage.

The district court's order entering summary judgment against Plaintiff and in favor of Defendants should be affirmed.

II.     The district court's order dismissing Counts II, III, VI and VII.

The district court's order dismissing Counts II, III, VI and VII should also be affirmed.

A.     Standard of review.

This Court reviews an order dismissing a claim pursuant to Rule 12(b)(6) *de novo*, applying the same standard as the district court, and may affirm on any ground supported by the record. *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1014 (9th Cir. 2023).

B.     Legal standard for a 12(b)(6) motion.

Federal Rule of Civil Procedure 8 requires the complaint to state a claim for relief. The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint,

and thus eliminate fatally flawed claims, thereby sparing litigants the burdens of unnecessary pretrial activity. *City of Oakland v. BP PLC*, 969 F.3d 895, 910 (9th Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal punctuation and citation omitted).

Testing the sufficiency of the complaint thus involves two steps. *Iqbal,* 129 S.Ct. at 1949-50. First, the court eliminates allegations that "are no more than conclusions." *Id.* Second, "[w]hen there are well-pleaded factual allegations, a court should ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. A claim is only plausible when it includes sufficient facts for the court to draw a reasonable inference that defendant is liable for the alleged misconduct–*i.e.*, the mere possibility of misconduct" is not enough. *Id*. at 1949-50. "Dismissal is appropriate when the complaint lacks a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory." *Saloojas*, 80 F.4th at 1014.

C.    Title VII Retaliatory Discharge (Count II)

In his Count II, Plaintiff attempted to allege that he was terminated in retaliation for filing a March 18, 2020 race discrimination charge with the EEOC. 6-SER-1492.

1.    Plaintiff failed to exhaust his claim.

To state such a retaliation claim pursuant to Title VII, Plaintiff must first have administratively exhausted it by presenting the claim to the EEOC. 42 U.S.C. §2000e-5(f). "The scope of a Title VII action depends on the scope of the EEOC charge." *Gannon v. Potter*, 298 F.App'x 623, 624 (9th Cir. 2008). The only claims exhausted for purposes of litigation are thus those "like or reasonably related to" those included in the charge. *Worth v. City of Kalispell*, 390 F.App'x 740, 741 (9th Cir. 2010). Retaliation claims involve different facts and are not "like or reasonably related to" discrimination claims. *See Vasquez*, 349 F.3d at 644-45.

The only EEOC charge Plaintiff filed—the one dated March 18, 2020—did not assert retaliation, much less retaliatory termination. *See* 6-SER-1352-54. Instead, it alleged "unfair" treatment with regard to his CAMs and his performance evaluation, and reassignment because his coworkers were afraid of him, with only the "race" box marked. The

"retaliation" box was not marked, and Plaintiff alleged no retaliation in the body of the charge. *Id*. Because Plaintiff's Count II thus alleges different claims, including different operative facts, than those contained in his only charge, the district court correctly dismissed it for failure to state a claim on which relief could be granted. 1-SER-30-31.

### 2. Plaintiff has waived the claim.

Not only did Plaintiff fail to exhaust his retaliation claim in the district court, he failed to present any meaningful argument or authority on appeal showing that he did exhaust his retaliation claim. Having failed in his opening brief to address the grounds relied on by the district court, Plaintiff has waived any challenge to the district court's order dismissing the claim. *See Ohan v. Am. Med. Ass'n.*, 2024 WL 2828823 (June 4, 2024) (*citing Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

### 3. The district court correctly denied reconsideration.

In the district court, Plaintiff asked for reconsideration of the order dismissing Count II. 6-SER-1322-33. The district court denied the motion. 5-SER-1175-86. This Court reviews the order denying reconsideration of the dismissal for abuse of discretion. *See Kopelev v.*

*Boeing Co.*, 2022 WL 17547807, \*1 (9th Cir. Dec. 9, 2022). "[A]n abuse of discretion occurs only when the district court fails to employ the appropriate legal standard, misapprehends the law, or rests its decision on a clearly erroneous finding of fact." *Smith v. Helzer*, 95 F.4th 1207, 1213-14 (9th Cir. 2024) (internal punctuation and citation omitted).

Here, the district court did not err, much less abuse its discretion, when it denied Plaintiff's motion for reconsideration. The district court denied the motion because it was not only based on information that was not, but could have been, included in the complaint, but also because the information made no difference. 5-SER-1179-80. Plaintiff's assertion that he mentioned "retaliation" to the EEOC investigator in April 2019 still could not have encompassed any claim of a retaliatory discharge that did not occur until May 2019. *Id*.

D.  Abuse of Office Under Indian Criminal Law (Count III).

Plaintiff's Count III alleges "wrongful termination through abuse of power and authority," *citing* 25 CFR § 11.448 Abuse of Office." 6-SER-1495.

The district court correctly concluded Plaintiff failed to state a claim on which relief can be granted in his Count III. 1-SER-31-32.

Indeed, the section does not apply to Plaintiff or his allegations at all. Instead, Title 25 of the Code of Federal Regulations contains "regulations of the Department of the Interior of general application relating to Indian affairs." 25 CFR §1.3. The specific section cited by Plaintiff is contained in Subpart D of the "Courts of Indian Offenses and Law and Order Code," setting forth "Criminal Offenses."

Furthermore, in his opening brief on appeal, Plaintiff failed to address the district court's grounds for dismissing the claim. Plaintiff has thus waived appeal of the order dismissing Count VII. *See Ohan*, 2024 WL 2828823 (*citing Indep. Towers of Wash.. v. Washington*, 350 F.3d at 929). The argument Plaintiff does make on appeal simply duplicates his unwarranted and rejected Title VII argument of unfair discipline.

E.   Conspiracy (Count VI)

In his Count VI, Plaintiff alleges "Conspiracy Against Rights" in violation of "Title 18 U.S.C. Section 241 and Title VII of the Civil Rights Act of 1964." 6-SER-1503. The claim factually asserts that Boeing conspired to deprive Plaintiff of his right to seek employment with any employer, by proposing as a settlement agreement term that Plaintiff agree not to seek or accept future employment with Boeing or its related

entities. *Id.*

The district court correctly concluded that Plaintiff failed to state a claim on which relief can be granted in his Count VI. 1-SER-34. Indeed, the cited statute, 18 U.S.C. § 241, is a criminal statute that confers no private right of action. Furthermore, there are no factual allegations that Boeing proposed the settlement term for any reason protected by Title VII (as opposed to it being a standard settlement term), nor did Plaintiff administratively exhaust any Title VII claim on this issue. Moreover, Plaintiff's claim that Boeing sent him a settlement agreement does not show a plausible "conspiracy." The complaint only identifies one violator, Boeing, which cannot have conspired alone.[7]

In his opening brief on appeal, Plaintiff concedes that he cannot state a claim pursuant to 18 U.S.C. § 241. In fact, Plaintiff's only argument on appeal regarding Count VI is to assert he should have cited 42 U.S.C. § 1985 in his complaint instead of 18 U.S.C. § 241. P. Br. 39.

---

[7] Even if the complaint had alleged a conspiracy between individuals it would still fail. *See also Freeman v. Zilliox*, 2022 WL 2057740, \*7 n.9 (C.D. Cal. April 29, 2022) (noting that §1985 claims alleging that individual members of the same legal entity conspired together may be barred by the intracorporate conspiracy doctrine). Most courts hold the doctrine applies to § 1985 claims.

49

That provides no grounds for reversal. First, Plaintiff failed to present that argument in his opposition to the motion to dismiss, and instead (wrongly) defended applicability of 18 U.S.C. § 241. Plaintiff cannot raise a new argument for the first time on appeal. *See Thistle v. Biden*, 2024 WL 3508641, *1 (9th Cir. July 23, 2024) ("We do not consider arguments and allegations raised for the first time on appeal.") (*citing Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009)).

Second, even if he had not forfeited the point, substituting 42 U.S.C. §1985 still states no plausible claim. Plaintiff asserts no conspiracy to deprive him of "equal protection" regarding a federal right. Legally, even if Plaintiff had asserted a conspiracy to violate Title VII, that would not state claim, as §1985 "may not be invoked to redress violations of Title VII." *Great Am. Fed. Sav. & Loan Ass'n. v. Novotny*, 99 S.Ct. 2345, 2352 (1979). Factually, Plaintiff has failed to show either a conspiracy or disparate treatment in Boeing's decision to offer the term at issue.

F.    Abuse of Power Regarding Previous Positions (Count VII)

Plaintiff's Count VII alleges "retaliation through acts of discrimination and abuse of office for quality tasks and assignments performed in previous positions at Labinal Inc. and Sikorsky Aircraft,"

50

*citing* "25 CFR Section 11.448 Abuse of Office and Title VII. . . "

The district court correctly concluded that Plaintiff failed to state a claim on which relief can be granted in his Count VII. 1-SER-34. Again, 25 CFR § 11.448 does not provide a cognizable basis of liability. To the extent Plaintiff intended to assert a Title VII retaliation claim, he has failed to allege administrative exhaustion for any such claim, much less one based on "tasks and assignments performed" for other employers. Moreover, Plaintiff failed to allege any facts plausibly showing that the retaliation was motivated by activity protected by Title VII.

On appeal, Plaintiff's opening brief presents no argument or authority addressed to dismissal of Count VII (other than a conclusory mention in a list of claims he asserts, in conclusory fashion, should not have been dismissed."). P. Br. 39. Plaintiff has thus waived appeal of the order dismissing Count VII. *See Ohan*, 2024 WL 2828823 (*citing Indep. Towers of Wash.*, 350 F.3d at 929).

III. Discovery issues

A. <u>Standard of Review</u>

This Court reviews a district court's orders regarding discovery for abuse of discretion. *IMDB.com v. Becerra*, 962 F.3d 1111, 1119 (9th Cir.

2020). And even where discovery rulings are erroneous, they do not result in reversal absent a showing of harm. *Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1327 (9th Cir. 1995). Plaintiff raises two discovery-related issues in his appellate brief. Neither has merit.

B.    Responses to discovery.

Plaintiff asserts in his opening brief that "[t]here are significant materials not produced throughout discovery." P. Br. 26. Plaintiff, however, fails: (1) to identify any particular interrogatory or document request that was not responded to, much less provide evidence of non-compliance; (2) to identify where he asked the district court to order more production; and (3) to provide any argument or authority showing where or how the district court erred. The district court noted the same absence of specificity. 1-SER-3, n.1. Having failed to identify and address the alleged errors in the district court or in this Court, Plaintiff has twice forfeited the point. *See Thistle*, 2024 WL 3508641 at *1; *Ohan*, 2024 WL 2828823.

Furthermore, the bulk of Plaintiff's opening brief relating to discovery consists of legal authority regarding the meaning of "discrete subparts" in Federal Rule of Civil Procedure 33. The list of citations,

however, is untethered to any discovery in this case, or to any aspect of any challenged order by the district court. Not only is the argument thus not meaningfully presented on appeal, what is presented is so for the first time on appeal. Plaintiff has thus waived any argument regarding the insufficiency of discovery responses. *See Thistle*, 2024 WL 3508641 at *1; *Ohan*, 2024 WL 2828823.

C.    Deposition transcript

Plaintiff also asserts in his appellate brief that: "[d]eposition transcripts were made purchasable to the plaintiff only September 4th after the closure of discovery on September 2nd" 2020; "plaintiff also never reviewed and approved the content in the deposition transcripts;" and that "[t]o this day, the plaintiff is unaware of what is included/discussed in the deposition transcripts." P. Br. 28.

Plaintiff provides no evidence for any of this. Furthermore, even accepting that the transcript was not "made purchasable" until September 4th, Plaintiff fails to explain why he still did not obtain one in time to respond to summary judgment (Defendants' motion was not filed until November 6, 2020) or prior to his appellate brief (originally submitted March 4, 2021). Moreover, Plaintiff never identified any error

in the deposition transcript submitted as an exhibit to Defendant's summary judgment motion or other harm, nor has he relied on any such harm or error on appeal. Indeed, any fact Plaintiff testified to in deposition should also ipso facto also be within his knowledge. In short, Plaintiff has identified no error, much less reversible error, in the district court.

IV.    The district court's order denying appointment of new counsel.

A.    Standard of Review.

This Court reviews a district court's denial of appointment for abuse of discretion. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

B.    Plaintiff fired his appointed counsel, and there is no abuse in denying him another.

Plaintiff's opening brief complains about denial of appointment of counsel. Plaintiff's position lacks merit.

On September 10, 2019, the court *did* appoint three attorneys to represent Plaintiff. 6-SER-1467-68. Within three days, however, Plaintiff, decided the attorneys had "not shown the will and or a sense of urgency to investigate the defendant, the issue and its circumstances." *See* 6-SER-1465-66. Plaintiff thus asked for a different counsel. *Id*. The district court denied this request, and then denied Plaintiff's request for

54

reconsideration of the denial. 6-SER-1355; 6-SER-1463-64.

The district court did not abuse its discretion. Plaintiff cannot demonstrate the "exceptional circumstances" required for any appointment of counsel, particularly in light of his education, prolific *pro se* litigation in this and other cases, and the lack of merit in his claims. *See Terrell*, 935 F.2d at 1017.[8] That conclusion is only reinforced by the fact that the district court *did* appoint counsel, but Plaintiff *chose* to proceed *pro se* rather than be represented by the three attorneys initially appointed for him because within three days he concluded they enough urgency for his liking. *Mascrenas v. Wagner*, 2021 WL 3095127, *2 n.2 (S.D. Cal. July 22, 2021) (there is no right to appointment of counsel, and an initial appointment does not guarantee subsequent counsel or one of his choosing); *Rivera v. McNeal*, 2021 WL 11634276 (S.D. Ala. July 30, 2021) (civil plaintiff "has no right to appointed counsel of his choice," and finding complaints did not show initially appointed counsel's performance so deficient as to require substitution).

---

[8] *See* 6-SER-1478; *Nahum v. LMI Aerospace, Inc.*, 2023 WL 3177806 (E.D. Mo. May 1, 2023), *aff'd*, 2023 WL 8469936 (8th Cir. Dec. 7, 2003); *Nahum v. Spear*, 2021 WL 1158854 (W.D. Wash. March 26, 2021), *aff'd*, 2022 WL 2339914 (9th Cir. June 29, 2022).

<u>CONCLUSION</u>

For all the foregoing reasons, the district court's rulings should be affirmed.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

s/ *David L. Schenberg*
David L. Schenberg
7700 Bonhomme Avenue, Ste. 650
St. Louis, Missouri 63105
Tel: 314.802.3935
david.schenberg@ogletree.com

56

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** ___21-38005_____

I am the attorney or self-represented party.

**This brief contains** __**10,303**_____ **words,** including ____0_____

words manually counted in any visual images, and excluding the items exempted by

FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select
only one)*:
[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** __s/ David L. Schenberg_____ **Date** __08/15/2024_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

57

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

**9th Cir. Case Number(s)** ___21-38005_____

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[   ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[ X ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

> Setondji Nahum
> 20221 Aurora Ave. N. #106
> Shoreline, WA 98133
> snahum29@gmail.com

**Description of Document(s)** *(required for all documents)*:

> Response Brief of The Boeing Company and Jeffrey Dillaman and attached Addendum

**Signature** __s/David L. Schenberg_____ **Date** ___08/15/2024_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

58

No. 21-35008

IN THE UNITED STATE COURT OF APPEALS
FOR THE NINTH CIRCUIT

SETONDJI VIRGUILE NAHUM,

Plaintiff-Appellant,

v.

THE BOEING COMPANY
and

JEFFREY DILLAMAN,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Washington
No. 2:19-cv-1114-BJR

**ADDENDUM TO RESPONSE BRIEF OF
THE BOEING COMPANY AND JEFFREY DILLAMAN**

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

David L. Schenberg
7700 Bonhomme Ave., Suite 650
St. Louis, Missouri 63105
314.802.3935

## TABLE OF CONTENTS

18 U.S.C. § 241 ................................................................ 61

28 U.S.C. § 4101(1) ........................................................... 61

42 U.S.C. § 1985 .............................................................. 61

42 U.S.C. § 2000e-2 ......................................,,..................... 63

42 U.S.C. § 2000e-5(f) ........................................................ 70

RCW 4.24.510 ................................................................ 73

25 CFR § 1.3 ................................................................. 74

25 CFR § 11.448 .............................................................. 74

Fed. R. Civ. P. 56(a) ........................................................ 74

18 U.S.C. § 241

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured--

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.


28 U.S.C. § 4101(1)

Defamation.—The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.


42 U.S.C. § 1985

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of

the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure

62

any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 2000e-2

(a) Employer practicesIt shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

(b) Employment agency practices

It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.

(c) Labor organization practices

It shall be an unlawful employment practice for a labor organization—

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

(d) Training programs

It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.

(e) Businesses or enterprises with personnel qualified on basis of religion, sex, or national origin; educational institutions with personnel of particular religion

Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, for an employment agency to classify, or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual, or for an employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining programs to admit or employ any individual in any such program, on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational

qualification reasonably necessary to the normal operation of that particular business or enterprise, and (2) it shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

(f) Members of Communist Party or Communist-action or Communist-front organizations

As used in this subchapter, the phrase "unlawful employment practice" shall not be deemed to include any action or measure taken by an employer, labor organization, joint labor-management committee, or employment agency with respect to an individual who is a member of the Communist Party of the United States or of any other organization required to register as a Communist-action or Communist-front organization by final order of the Subversive Activities Control Board pursuant to the Subversive Activities Control Act of 1950 [50 U.S.C. 781 et seq.].

(g) National security

Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to fail or refuse to hire and employ any individual for any position, for an employer to discharge any individual from any position, or for an employment agency to fail or refuse to refer any individual for employment in any position, or for a labor organization to fail or refuse to refer any individual for employment in any position, if—

> (1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any

65

security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and

(2) such individual has not fulfilled or has ceased to fulfill that requirement.

(h) Seniority or merit system; quantity or quality of production; ability tests; compensation based on sex and authorized by minimum wage provisions

Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin. It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of title 29.

(i) Businesses or enterprises extending preferential treatment to Indians

Nothing contained in this subchapter shall apply to any business or enterprise on or near an Indian reservation with respect to any publicly announced employment practice of such business or enterprise under which a preferential treatment is given to any individual because he is an Indian living on or near a reservation.

(j) Preferential treatment not to be granted on account of existing number or percentage imbalance

66

Nothing contained in this subchapter shall be interpreted to require any employer, employment agency, labor organization, or joint labor-management committee subject to this subchapter to grant preferential treatment to any individual or to any group because of the race, color, religion, sex, or national origin of such individual or group on account of an imbalance which may exist with respect to the total number or percentage of persons of any race, color, religion, sex, or national origin employed by any employer, referred or classified for employment by any employment agency or labor organization, admitted to membership or classified by any labor organization, or admitted to, or employed in, any apprenticeship or other training program, in comparison with the total number or percentage of persons of such race, color, religion, sex, or national origin in any community, State, section, or other area, or in the available work force in any community, State, section, or other area.

(k) Burden of proof in disparate impact cases

(1)

(A) An unlawful employment practice based on disparate impact is established under this subchapter only if—

(i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

(ii) the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

(B)

(i) With respect to demonstrating that a particular employment practice causes a disparate impact as described

67

in subparagraph (A)(i), the complaining party shall demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice.

(ii) If the respondent demonstrates that a specific employment practice does not cause the disparate impact, the respondent shall not be required to demonstrate that such practice is required by business necessity.

(C) The demonstration referred to by subparagraph (A)(ii) shall be in accordance with the law as it existed on June 4, 1989, with respect to the concept of "alternative employment practice".

(2) A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this subchapter.

(3) Notwithstanding any other provision of this subchapter, a rule barring the employment of an individual who currently and knowingly uses or possesses a controlled substance, as defined in schedules I and II of section 102(6) of the Controlled Substances Act (21 U.S.C. 802(6)), other than the use or possession of a drug taken under the supervision of a licensed health care professional, or any other use or possession authorized by the Controlled Substances Act [21 U.S.C. 801 et seq.] or any other provision of Federal law, shall be considered an unlawful employment practice under this subchapter only if such rule is adopted or applied with an intent to discriminate because of race, color, religion, sex, or national origin.

(l) Prohibition of discriminatory use of test scores

It shall be an unlawful employment practice for a respondent, in connection with the selection or referral of applicants or candidates for employment or promotion, to adjust the scores of, use different cutoff

scores for, or otherwise alter the results of, employment related tests on the basis of race, color, religion, sex, or national origin.

(m) Impermissible consideration of race, color, religion, sex, or national origin in employment practices

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

(n) Resolution of challenges to employment practices implementing litigated or consent judgments or orders

(1)

    (A) Notwithstanding any other provision of law, and except as provided in paragraph (2), an employment practice that implements and is within the scope of a litigated or consent judgment or order that resolves a claim of employment discrimination under the Constitution or Federal civil rights laws may not be challenged under the circumstances described in subparagraph (B).

    (B) A practice described in subparagraph (A) may not be challenged in a claim under the Constitution or Federal civil rights laws—

        (i) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had—

            (I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

            (II) a reasonable opportunity to present objections to such judgment or order; or

(ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

(2) Nothing in this subsection shall be construed to—

(A) alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened;

(B) apply to the rights of parties to the action in which a litigated or consent judgment or order was entered, or of members of a class represented or sought to be represented in such action, or of members of a group on whose behalf relief was sought in such action by the Federal Government;

(C) prevent challenges to a litigated or consent judgment or order on the ground that such judgment or order was obtained through collusion or fraud, or is transparently invalid or was entered by a court lacking subject matter jurisdiction; or

(D) authorize or permit the denial to any person of the due process of law required by the Constitution.

(3) Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsection shall preclude a transfer of such action pursuant to section 1404 of title 28.

42 U.S.C. § 2000e-5(f)

Civil action by Commission, Attorney General, or person aggrieved; preconditions; procedure; appointment of attorney; payment of fees, costs, or security; intervention; stay of Federal proceedings; action for

70

appropriate temporary or preliminary relief pending final disposition of charge; jurisdiction and venue of United States courts; designation of judge to hear and determine case; assignment of case for hearing; expedition of case; appointment of master

(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d), the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b), is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without

the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

(2) Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited.

(3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

(4) It shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case.

(5) It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

RCW 4.24.510

Communication to government agency or self-regulatory organization— Immunity from civil liability.

A person who communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.

<u>25 CFR § 1.3</u>

Chapters I and II of this title contain the bulk of the regulations of the Department of the Interior of general application relating to Indian affairs. Subtitle B, chapter I, title 43 of the Code or Federal Regulations contains rules relating to the relationship of Indians to public lands and townsites. Subtitle A of title 43 CFR has application to certain aspects of Indian affairs and, among other things, contains procedural rules for appellate and other administrative review and for practice before the Department of the Interior, of which the Bureau of Indian Affairs is a part. Indian health matters are covered in 42 CFR part 36. Title 30 CFR contains regulations on oil and gas and other mining operations, which, under certain circumstances, may be applicable to Indian resources.

<u>25 CFR § 11.448</u>

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor if, knowing that his or her conduct is illegal, he or she: (a) Subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or (b) Denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.

<u>Fed. R. Civ. P. 56(a)</u>

Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.