*Pro Se 7 2016*

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CASE NO. 21-35008

APPELLANT'S REPLY BRIEF

SETONDJI VIRGILE NAHUM

                Appellant(s),

    v.

The Boeing Company et. al ,

                Appellee(s).

APPELLANT'S REPLY BRIEF               1

Pro Se 7 2016

# TABLE OF CONTENTS

Title and Caption Page ...................................................................1

Table of Contents.............................................................................2

Table of Authorities ........................................................................4

I.   Introduction.................................................................................6

II.   Background ...............................................................................8

III.  Statement of Issues On Appeal.................................................9

IV.  Statement of Case ..................................................................10

    1.  Hiring of the Appellant .......................................................10

    2.  The Appellant Exemplary and Exceptional Performance Under

        Disgraceful, Disrespectful and Harassment Settings ...............10

    3.  Ambushing, Framing and Sabotaging the Appellant to Disguise Racial

        Discrimination and Circumvent Legal Mandates ....................11

    4.  Internal Complaints Focused on Illegal Practices and Fictitious Actions

        that Reasonably Inferred Racial Discrimination and Harassment ..........14

    5.  Proceedings in The District Court .........................................14

    6.  Conspiracy Against Rights .................................................15

V.   Arguments................................................................................16

  A. Legal Practices, Standards and Procedures .............................16

    1.  The Law Does Not Support Summary Judgment on Disputed Facts .....16

    2.  Courts Have Been Cautioned Not to Grant Summary Judgment In

        Employment Discrimination Cases .......................................17

    3.  The Appellants False Exculpatory Statements Are Sufficient for the

        Appellant to Defeat Summary Judgment ................................18

    4.  Genuine Discovery Disputes Remain Unresolved .................19

*Pro Se 7 2016*

B.  The Occurrence of Illegal Acts Against the Plaintiff ....................................21

    1.  Racial Discrimination ...................................................................22

    2.  Retaliation Upon Filing an E.E.O.C. Charge .............................24

    3.  Harassment and Defamation.........................................................25

    4.  Abuse of Position, Conspiracy Against Rights and Harassment..............26

C.  Proceedings In the District Court  .............................................................28

    1.  Repealing Appointment of Counsel was Unlawful .................................28

    2.  Discovery Disputes Renders Critical The Need for Trial, Examination and Cross-Examination  ................................................29

VI.  Conclusion .................................................................................................31

    Signature Page .........................................................................................32

    Harassment Awareness Campaign ................................................................33

Pro Se 7 2016

# TABLE OF AUTHORITIES

Clark V. Claremont University Center (1992) 6 Cal. App. 4th 639 [8 Cal.Rptr.2d 151] ...................................................................................................21

Commonwealth v. Whitworth, 74 S.W.3d 695, 698 (Ky., 2002)............................17

Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) ......................................17

Daugherty v. Maryland Heights, 231 S.W.3d 814, 818 ...............................7, 17, 26

Davis v. Geiger, 212 S.W. 384, 388 ...............................................................7, 17, 23

Donchin v. Guerrero, 34 Cal. App. 4th 1832, 41 Cal. Rptr. 2d 192 (Cal. Ct. App. 1995) ....................................................................................................18

EEOC v. General Motors Corp., 11 F.Supp.2d 1077, 1080 (E.D.Mo. 1998) .........17

Erickson v. Pardus, 551 U.S. 89, 94 (2007)..........................................................26

Estelle v. Gamble, 429 U.S. 97, 106 (1976)…………………………………….26

Haines v. Kerner, 404 U.S. 519,'520 (1972)   …………………………………….21

Harris V. City of Santa Monica (2013) 5 Cal. 4th 203 .............................................21

Harris v. Hays, 452 F.3d 714, 718 (8th Cir. 2006) ...............................................23

Hall v. Belimon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991) ...............................21

ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376..................................................................................................................7, 16

Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938)…………………………….27

Martin v. Foltz (6th Cir. 1985) 773 F.2d 711, 720 ................................................18

Oliver v. City of Orlando, Case No. 6:06-cv-1671-Orl-31DAB (M.D. Fla. Oct. 31, 2007)   …………………………………………………………………….19

People v. Mendoza (1987) 192 Cal. App. 3d 667 [238 Cal. Rptr. 1].....................18

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).....................18

Robinson v. American Red Cross, 753 F.3d 749, 754 (8th Cir. 2014) ...................22

U.S. v. Clark (8th Cir. 1995) 45 F.3d 1247 ........................................................18

*Pro Se 7 2016*

United States v. Holbert (5th Cir. 1978) 578 F.2d 128............................................18

Winfrey v. City of Forrest City, Ark., 882 F.3d 757, 758 (8th Cir. 2018) ..............23

**Authorities and Statutes**

42 U.S.C. 1981.............................................................................................23

RCW 9.58 ....................................................................................................6

RCW 49.60 ..................................................................................................6

Title 18 Section 241 (*Derived Civil Mandates shall Be Construed*)............26

Title VII of the Civil Rights Act of 1964 ......................................6, 21, 22, 26

*Pro Se 7 2016*

# I.    INTRODUCTION

**The defendants' answering brief simply continue their horrendous patterns of irrational misconstrue facts and deceptively insane falsity scripts better suited for Netflix than a conscientious and legitimate court of law**. Given the latest set of unfortunate occurrences that have played out in public and affirmed critical quality and safety issues with the appellees' practices as stated by the appellant in his court filings as the real reasons behind their unjustified framing, sabotaging, and wrongful termination of the appellant's employment; **the defendants' answering brief is immoral**. It maintains their envious child-like retaliatory plot approach against a plaintiff that simply stood for Quality, Transparency, Safety and Equality.

Federal and State laws such as **Title VII, Section 1981 and RCW 49.60** make it very clear that it is unlawful to racially discriminate, harass, abuse, defame, frame, sabotage, target and conspire against the rights of an individual. **Even in Washington, federal and state employment laws apply for such a large beloved company**. If the employment termination violates the employee's legal rights, a public policy and/or a company policy, the employment termination is considered wrongful, and the employee has a valid wrongful termination claim.

The "Pro Se" Appellant Setondji Virgile Nahum was hired as a 2nd Level Manufacturing Industrial Engineer by the Boeing Company on the 16th of February 2018. His employment lasted 15 months. **The appellant was subjected to**

*Pro Se 7 2016*

**premeditated and illegal acts of racial discrimination, retaliation upon filing an E.E.O.C. Charge, harassment, abuse, defamation, and conspiracy against rights**. The "Pro Se" Appellant promptly filed his lawful complaint with the district court. **His filings were liberally constructed as afforded by federal law**.

**The district court summary judgment decision was unlawful**. Federal and State laws do not support summary judgment on disputed facts. A genuine issue of material fact exists "where the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' is real, not merely argumentative, imaginary, or frivolous." **In determining whether a genuine issue of material fact exists, facts are viewed in the light most favorable to the non-moving party**. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376.* Summary judgment is rarely appropriate in employment discrimination cases where determination of discriminatory animus requires the resolution of factual disputes that turn on reasonable inferences**. Rather, once subjectively offensive conduct is established, whether a reasonable person would similarly find the conduct offensive will generally be a question of fact for the jury"** *Daugherty v. Maryland Heights, 231 S.W.3d 814, 818.*

"**It is the jury's function to pass upon what would meet the requirements or satisfy the mind of the theoretical, reasonable, ordinary person which the law gives to the jury as a standard by which to measure human conduct**" *Davis v. Geiger, 212 S.W. 384, 388.*

*Pro Se 7 2016*

## II.     BACKGROUND

The  "Pro Se" appellant filed his complaint with the district court on July 18th, 2019. Seven liberally constructed claims were presented: racial discrimination, retaliation upon filing an E.E.O.C. charge, abuse of power and authority, harassment, defamation, conspiracy against rights, retaliation for program audits performed in previous positions at third-party companies/contractors.

After initially agreeing to appoint counsel, the district court unlawfully repeal this decision allegedly because the appellant inquired about the possibility of appointing a new group of individuals that hold employment law credentials and the pedigree to fight the appellee's arsenal of nationally decorated law firms. Upon such repeal which left the appellant with no choice but to proceed "Pro Se", **the district court proceedings became a sham**. A new judge was also assigned to the case.

On December 17th, 2019, the district court dismissed four claims including one of the most meritful claims: The claim for retaliation upon filing an E.E.O.C. charge. A motion for reconsideration for such incomprehensible action from the court was also dismissed on April 20th, 2020 ( ***See Appendix Q Page 502-543***).

On December 28th, 2020, the district court granted summary judgment to the appellees despite the existence of material facts disputes, unresolved discovery disputes and requests from the "Pro Se" appellant for the court to uphold his right to legally construct pleadings and filing.

This appeal with the 9th circuit was promptly filed on the 4th of January 2021.

*Pro Se 7 2016*

### III. STATEMENT OF ISSUES ON APPEAL

A. Whether the law supports summary judgement on disputed facts; Also, whether established subjectively offensive conduct is a question of fact for the Jury; and thus, this court shall overturn the district court decision to grant summary judgement to the Appellees?

B. Whether this court shall overturn the district court decision to dismiss the "Pro Se" Appellant's claims of retaliation upon filing an E.E.O.C. Charge, Abuse of Position/Power, Conspiracy Against Rights, Harassment/Retaliation for Assignments performed in previous positions?

C. Whether the law supports summary judgement on a sham discovery with unresolved/remaining disputes, and thus this court shall overturn the district court decision to grant summary to the Appellees?

D. Whether the district court decision to repeal appointment of counsel was lawful, and thus this court should overturn the district court order repealing appointment of counsel; because all the Appellant did was inquire about the possibility of appointing a different counsel *because none of the appointees practiced employment law while the Appellees had hired top 10 national law firms based in Washington, DC with deep roots and affiliations with federal officials*?

E. Whether this court shall assert "Pro Se" Litigants' right to liberally construct pleadings and filings as afforded to them by federal law and court; and thus overturn the district court decision to grant summary judgment to the appellees because at no point during proceeding did the district court ever uphold the "Pro Se" litigant right to liberally construct pleadings and filings?

*Pro Se 7 2016*

## IV.    STATEMENT OF THE CASE

### 1.  <u>Hiring of the Appellant</u>

The appellant is an African/Black male who holds a Master of Science in Aeronautics "With Distinction" from Embry-Riddle Aeronautical University acquired in May 2021(Appendix A). He has roughly 10 years of experience in the Aerospace and Technology industries. He also holds Project Management phases certifications. The appellant was hired based on his stellar qualifications, exceptional performance at previous employers and excellent skills demonstrated through the defendants' interview process. Day 1 of employment was February 16th, 2018.

### 2.  <u>Plaintiff's Exemplary and Exceptional Performance Under Disgraceful, Disrespectful and Harassment Settings</u>

The plaintiff's technical performance and deliverables were brilliant despite the appellees restricting resources access (*CAD model and BOM tool for example*) to the appellant compared to tools and materials made available to his co-workers of different ethnicities and races. The provided **evidence on *Appendix C Page 9-12* depict excellent performance ratings of the appellant for critical categories such as priorities, technical skills, integrity, quality, productivity, and leadership**. Thus, contrary to the **insanely false defense** (*stated through the answering brief*), **there was in reality no issues with the appellant's performance**.

One of the real issues was the daily disrespect and harassment endured by the appellant. It rendered difficult relationship with select co-workers and employees.

*Pro Se 7 2016*

For example, see **evidence on *Appendix I Page 164 and 167*** where the appellant is characteristically **referred to as a "problem child" in official company communications by white co-workers and employees**. The appellees would routinely use the appellant to play sardonic and sadistic games by requiring conflicting work, violation of established quality procedures, and disregard for standard safety policies. Any attempts for clarification or reasonable communication from the appellant was immediately labelled as insubordination. It was an amusing mocking game to the appellees who internally referred to the appellant as a "dog", a "bulldog", a "fighting dog", a "carpet to be stepped on",  a "slave worker"… etc...

### 3. <u>Ambushing, Framing and Sabotaging the Appellant to Disguise Racial Discrimination and Circumvent Legal Mandates</u>

After baiting the appellant into accepting employment with an African/Black manager, the defendants quickly substituted this individual (*within a month*) with their preferred weapon of abuse and disrespect: Jeffrey Dillaman, who was happily content with regurgitating child-like irrational allegations and using such as an excuse to attempt to discredit the appellee's work. It is this very fact that led to downgrading the appellee's work based on bias and fabricated fantasy stories.

**The appellees fictitious corrective actions were part of a premeditated plan to disguise racial discrimination and circumvent legal mandates**. All requested work was successfully completed upon verification and validation of the request as necessary. **Evidence on Appendix C page 17**  shows the completed

*Pro Se 7 2016*

deliverable for the first action. **Appendix C Page 18 and 19** show the MES historic for the completed deliverable for the first action. Here, ***the appellant knew the request was illogical and not on par with standard manufacturing practices***. Since they had already been issues with multiple conflicting requests from IE management, Leads and Manufacturing Managers; the appellant needed to ensure there was a record to validate the irrational work being requested. ***This provided a shield against typical bullying tactics*** as they had made such request prior to this only to blame the appellant a few days later for not indicating that such request did not make sense.

This was the reality of the appellant's employment circumstances: **an infernal back & forth between multiple stakeholders with contradicting requests which ensured that blame was asserted to the appellant no matter what solution is implemented**. It is this unwelcomed bullying and harassment tactics that forced the appellant to verify the requests and acquire proofs for the purpose of justifying the requested work to be completed. All that occurred is the appellant's insistence on verifying requests and acquiring procedural proof prior to completing illogical work. This shall be required of any engineer and such especially in the aerospace field.

This pattern continued with the second and third fictitious corrective actions which get even more ridiculous than the previous aforementioned circumstance. First, contrary to statements from the appellees in their reply brief, they never used different individual to verify the veracity of alleged wrongdoing. It was the accuser himself: Jeffrey Dillaman who was investigating his own accusations and providing

instructions to the Fact Finder (***See evidence on Appendix G Page 63 and 62***). The most telling statement about these circumstances is shown on *Appendix G Page 63* where the fact finder states that "***neither does he have the time, nor does he have the expertise to investigate any of the presented allegations***".

Second, tasks weren't specified with the 2nd and 3rd fictitious corrective actions. The discrepancy between completed vs expected is also not specified. **In reality, all requested tasks were successfully completed** as shown by **evidence on *Appendix N Page 443 to 466*** which displays the produced copies of the relevant deliverables.

Third, **the real problem was constraints due to program and critical quality issues which were directly the responsibility of management** (please see **evidence on *appendix J Page 281-282***). These problems were compounded by a select group of **employees and co-workers' insistence on playing sadistic mocking games** and not welcoming valid feedback from the appellant to limit the impact of uncertainties. This rejection of valid technical input from the appellant fostered spiraling chaos.

Finally, the appellees were so envious and racist that even after the appellant's departure from the company they were still fabricating falsities and attempting to frame him with ridiculously "***NUTS***" allegations (see ***Appendix M 314-336***). They claimed that the appellant sent emails with attachment right before his departure (**page 317**). They had the forensic team complete a review. In reality nothing at all was sent and they were just looking to further frame/sabotage the appellant as he has

*Pro Se 7 2016*

been attempting to inform courts for years now (***please see Appendix M Page 333***).

**This scenario is the perfect illustration of daily occurrences with the appellees**.

*The challenge with this case is that due to affinity and relationships, **courts have thus far unfortunately allowed the appellees' idiocy to overshadow the case**. Courts have yet to allow fairness and the shedding of lights into the premeditated "Hate Crime" endured by the appellant: **an infernal cycle of ridiculous falsity without accountability which sole purpose was to frame and sabotage him.***

**4. <u>Internal Complaints Focused on Illegal Practices and Fictitious Actions that Reasonably Inferred Racial Discrimination and Harassment</u>**

Upon instructions from the EEOC office on March 18th, 2019, the appellant filed an internal complaint approximately on April 10th, 2019, that highlighted bias, unequal treatment and reasonably inferred racial discrimination and harassment. Facts were meticulously presented for a genuine review to uncover the vicious and unethical harassment games the appellees were subjected the appellant to. **Negligent reviewers** failed to uphold ethics rules (***Appendix N Pages 339-379***)

**5. <u>Proceedings in the District Court were a Sham</u>**

The district court proceedings were a sham upon the unlawful repeal of appointed counsel (*See Appendix P page 487*). The appellant filed a motion for appointment of new counsel because none of the appointees practice in a field related to employment law. The appellant never requested repealing of appointed counsel and filed two motions for reconsiderations to prevent the district court from repealing counsel.

*Pro Se 7 2016*

Upon such unlawful repeal and a change of judge, the appellees were allowed to violate local court rules, FRCP and legal standards as they please. The appellees specifically did not comply with discovery laws. Most inexplicable is the appellees making deposition transcripts available only after filing deadline.

**6.  Retaliation upon filing an E.E.O.C. Charge**

The E.E.O.C. charge was filed on March 18th, 2019. Their office typically contacts employers within 10 days. As early as April 1st, 2019, the appellees are seen discussing details with investigators (***See Appendix Q***). Nevertheless, the appellees claimed to have no knowledge of an E.E.O.C. charge at the time of the wrongful termination of the appellant's employment on May 13th 2024.

**7.  Conspiracy Against Right with External Influences**

The appellees' answering brief include their admitting of conspiring against the appellant' rights. ***Docket 32 Page 48*** depict their own admitting statement: **" *The Claim factually asserts that the appellees conspired to deprive the appellant of his right to seek employment with any employer*."**

Pro Se 7 2016

# V.    ARGUMENTS

## A. Legal Practices, Standards and Procedures

## 1. <u>The Law Does Not Support Summary Judgement on Disputed Facts</u>

Significant disputes exist on materials facts of all claims. The Appellant proved that the reasons articulated by the employer was false and was really a pretext for impermissible discrimination.  For example, while the appellees attempted to frame the existence of technical performance issues as the defense for wrongfully terminating the appellant's employment, he provided **Appendix C page 9-12** which show performance ratings depicting no performance issues. This alone is sufficient to overturn summary judgment because the indisputable records show multiple plausible but contradictory accounts of genuine and essential facts in this case.

A genuine issue of material fact exists "*where the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' is real, not merely argumentative, imaginary, or frivolous." In determining whether a genuine issue of material fact exists, facts are viewed in the light most favorable to the non-moving party*".  *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376.* "Summary judgment is rarely appropriate in employment discrimination cases where determination of discriminatory animus requires the resolution of factual disputes that turn on reasonable inferences. Rather, once subjectively offensive conduct is established, whether a reasonable person would

similarly find the conduct offensive will generally be a question of fact for the jury"

*Daugherty v. Maryland Heights, 231 S.W.3d 814, 818.*

"It is peculiarly the jury's function to pass upon what would meet the requirements or satisfy the mind of the theoretical, reasonable, ordinary person which the law gives to the jury as a standard by which to measure human conduct" *Davis v. Geiger, 212 S.W. 384, 388.* "Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted." *Crawford v. Runyon, 37 F.3d at 1341.*

## 2. Courts Have Been Cautioned Not to Grant Summary Judgment in Employment Discrimination Cases

"***Courts are cautioned that summary judgement shall seldom be granted in employment discrimination cases***" *EEOC v. General Motors Corp., 11 F.Supp.2d 1077, 1080 (E.D.Mo. 1998), citing Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).* The court in EEOC v. General Motors Corp., supra, relied on the Eighth Circuit's reasoning that "because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted." *Crawford, Runyon, 37 F.3d at 1341.* Under the rules and cases noted, the existence of significant factual disputes precludes courts from granting summary judgment. Thus, the moving party cannot succeed with their quest for summary judgment." *Commonwealth v. Whitworth,* 74 S.W.3d 695, 698 (Ky., 2002).

*Pro Se 7 2016*

### 3. <u>The Appellees' False Exculpatory Statements are Sufficient for the Appellant to Defeat Summary Judgment</u>

The appellees' attempt to frame the existence of technical performance issues as the reason for wrongfully terminating the appellant's employment are by legal standards defined as **<u>false exculpatory statements</u> because the appellant proved their falsity by providing Appendix C page 9-12 which shows satisfactory performance ratings**.

This alone is also sufficient to overturn summary judgment because false exculpatory statements reflect the appellee's consciousness of guilt. In turn, the existence of that guilt creates an inference unfavorable to the appellees. This inference, by itself, is enough for the appellant to defeat summary judgment and in this case reverse the grant of summary judgment to the appellee. See *People v. Mendoza (1987) 192 Cal. App. 3d 667 [238 Cal. Rptr. 1]. Also see Donchin v. Guerrero, 34 Cal. App. 4th 1832, 41 Cal. Rptr. 2d 192 (Cal. Ct. App. 1995).*

Federal case law has similarly held consciousness of guilt to be provable by circumstantial evidence such as false exculpatory statements. See *U.S. v. Clark (8th Cir. 1995) 45 F.3d 1247* where the 8th Circuit affirmed inference of guilty consciousness from false exculpatory statements. Also see *United States v. Holbert (5th Cir. 1978) 578 F.2d 128.* Also see *Martin v. Foltz (6th Cir. 1985) 773 F.2d 711, 720*, where the 6th circuit held that "false exculpatory statements are probative of a guilty conscience and hence of guilt and are admissible". Finally see *Reeves v.*

*Pro Se 7 2016*

*Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)* "Proving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). In appropriate circumstances, the trier of fact can reasonably **infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose**. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt".

### 4. <u>Genuine Discovery Disputes Remains Unresolved</u>

The defendants' discovery production was a sham that violated both local court rules and the FRCP. It directly hindered the district court proceedings.

First, the appellees refused to answer interrogatories. They labelled typically subsumed related items as discrete parts. But, the "FRCP 33(a)(1) permits a party to serve on any other party 25 interrogatories and Courts including the 11th circuit have allowed related questions as subsumed not discrete parts. "*If the subparts are subsumed and necessarily related to the primary question, then the subpart is not 'discrete' within the meaning of Rule 33(a).*" *Oliver v. City of Orlando*, Case No. 6:06-cv-1671-Orl-31DAB (M.D. Fla. Oct. 31, 2007).

Second, the appellees only made available deposition transcript after the filing deadline. This remains bullish, inexplicable and infuriating (**Appendix L P 312**)

Third, upon the unlawful repeal of appointed counsel, the appellees recklessly disregarded standard FRCP discovery rules and practices. They did not produce most of the items requested by the appellant. They relied on court orders to block genuine discovery request and even then violated these court orders as they wish.

Finally, the aforementioned discovery issues alone mandate overturning summary judgment.

*Pro Se 7 2016*

**B.  The Occurrence of Title VII and Section 1981 Racial Discrimination; Retaliation Upon Filing an E.E.O.C. Charge, Abuse of Power and Authority, Harassment, Defamation, Conspiracy Against Rights.**

First, the appellees' claims of deficiencies do not, in and of themselves, dispel the inferences that the employment decision was unlawful. See *Clark V. Claremont University Center (1992) 6 Cal. App. 4th 639 [8 Cal.Rptr.2d 151]*

Second, **the law states that it is for the jury (***not the Judge***) to decide whether the employment decision would have differed but for the race factor**. Also see *Harris V. City of Santa Monica (2013) 5 Cal. 4th 203* where it is imposed that determining whether the appellees would have fired the appellant anyway is for the jury to resolve with the appellees required to carry the burden of proof. **This alone is also sufficient for overturning summary judgment.**

Third, **the "Pro Se" appellant presented liberally construed claims**. They included wrongful termination: racial discrimination, retaliation upon filing an E.E.O.C. Charge, abuse of power and authority, harassment, defamation, conspiracy against rights as afforded by Federal law and Courts. **The Supreme Court has directed courts to hold pro se litigants' pleadings "***to less stringent standards than formal pleadings drafted by lawyers.***"** Haines v. Kerner, 404 U.S. 519,'520 (1972). This means "*that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.*" Hall v. Belimon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991). **This 9th Circuit appellate court has provided an informal brief platform and format to meet such mandate.**

**1. Racial Discrimination**

Here, the "Pro Se" appellant easily presented an irrefutable prima facie racial discrimination claim. A plaintiff asserting a Title VII racial discrimination claim must establish: *(1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) rise to an inference of discrimination on the basis of race. Robinson v. American Red Cross, 753 F.3d 749, 754 (8th Cir. 2014).* Here, the appellant easily met his burden. (1) The plaintiff's EEOC charge and Rights to Sue Letter (***Appendix O Page 478***) showed that the plaintiff is Black/African America; (2) The plaintiff's official performance evaluation ratings (***Appendix C Page 9-12*** ) and ***Appendix A***, prove without any reasonable doubts that the plaintiff is highly qualified for the position; (3) The Appellee's ("*unlawful and discriminatory"*) termination of the appellant's employment constitute a significant adverse employment action; (4) the plaintiff has pleaded a plethora of facts and presented significant evidence (***See Complaint, Informal Opening Brief and Section IV & V of this reply brief***) depicting a pattern of reckless disregard for federal mandates in matters pertaining to the African/Back plaintiff, and significant differential and discriminatory treatment in matters pertaining to the African/Black plaintiff versus such circumstances pertaining to his comparators and other employees which in all, and when considering the totality of the circumstances, rise to significant inferences of race discrimination. See *Yanowitz v. L'Oréal USA, Inc., 36 Cal. 4th 1052-1060, (2005).* Title VII prohibits employers

from discriminating against employees on the basis of "race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like." Winfrey v. City of Forrest City, Ark., 882 F.3d 757, 758 (8th Cir. 2018).

Moreover, to establish a prima facie case of discrimination under § 1981, the plaintiff must show: *(1) that he belongs to a protected class, (2) that the defendant intended to discriminate on the basis of race, and (3) that the discrimination interfered with an activity protected by the statute. Harris v. Hays, 452 F.3d 714, 718 (8th Cir. 2006).* (1) The plaintiff's EEOC charge (***Appendix O***) shows that the plaintiff is Black/African America; (2) the defendant planned and premeditated intention to discriminate on the basis of race has been highlighted through the amended complaint, the informal opening brief and section VI and V of this reply brief (3) the plaintiff issued multiple complaints to the appellees including counterclaims for each Fact Finding investigation of "fictitious " corrective action but most importantly to the ethics department (***Appendix N Page 339-379***).

Finally, **the issue being decided in this appellate court is not even the merit of the claim but rather whether the function of determining compliance to the requirements of a theoretical, reasonable and ordinary person's mind is given by the law to the Judge or the Jury**. It is peculiarly the jury's function to pass upon what would meet the requirements or satisfy the mind of the theoretical, reasonable, ordinary person which the law gives to the jury as a standard by which to measure human conduct" *Davis v. Geiger, 212 S.W. 384, 388.*

*Pro Se 7 2016*

**2. Retaliation Upon Filling an E.E.O.C. Charge**

The informal brief platform and format provided by this 9th circuit appellate court allowed the "Pro Se" appellant to liberally construe strong arguments that showed the validity and merit of this claim. In fact, while in "***District Court Dkt 21 at 11***", the appellees state they did not have knowledge of the plaintiff's EEOC Charge, records show that the appellants were already aware of the plaintiff's filing with the EEOC by April 1st Please see Appendix H (Page 64 and Page 65). It is significant because it occurs barely 14 days after the EEOC Filing and approximately just 7 weeks prior to the appellant wrongful employment termination. Please note that while the Appellees misleading and unethical discovery practices attempts to obscure the fact that "Catherine Diga" was the internal induvial handling the E.E.OC. investigative inquiry, ***Appendix K page 28***6 is provided as evidence to highlight her role.

The appellees would like to point the attention of this appellate court to ***Appendix Q Page 502-509*** (***District Court Docket 64***) where the appellees demonstrated without any reasonable doubt a direct correlation between his EEOC Filing and his employment termination and such within the parameters specified as illegal practices by the law. *The inference of causation between protective activity and employment termination was presented to the district court as evidently as possible*. There is no law or legal theory that supported dismissing this claim. The district court judge erred in the handling of this claim and dismissal of this claim shall be overturned.

### 3. Harassment and Defamation

The district court erred in granting summary judgment against these 2 claims because of the existence of material facts disputes.

First, the validity and merit of these claims were confirmed by the fact that the district court could not dismiss these claims based on Title VII and RCW 9.58 requirements due to either a failure to state of claim, the insufficiency of pleaded facts and any other legal scheme.

Second, the existence of material facts disputes for these 2 claims is highlighted by the appellant's claims in his complaint and the opposing responses filed by the appellees in their responsive to the complaint. Furthermore, multiple filings including the motion for summary judgment, the opposition to summary judgement filed by the appellant and the informal opening brief highlights nothing but opposing facts, disputed facts and fierce contrasts in the presentation of occurrences.

Third and as previously stated, it is unlawful to grant summary judgment on disputed facts. ***A genuine issue of material fact precludes summary judgment***. **Even per rule 56 of the FRCP**: "**considering some facts undisputed does not of itself allow summary judgment. If there is a proper response or reply as to some facts, the court cannot grant summary judgmen**t". It governs the proceedings.

Thus, and based on the above, the district court decision to grant summary judgment shall be overturned (*please keep in mind appellees' dangerous harassment practices that have now been recently revealed to the public by other litigants*)

*Pro Se 7 2016*

### 4. Abuse of Position, Conspiracy Against Rights and Harassment due to Quality Audits performed at Third-party companies

These 3 claims suffer from the district court judge decision to disregard the supreme court mandate for allowing liberal construction of "Pro Se" claims and complaints. *"A Pro Se complaint, however, inartfully pleaded, must be liberally construed."* *Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).* The appellees' claims of deficiencies do not, in and of themselves, dispel the inferences that the torts occurred. Material facts dispute between the appellant's " Pro Se" complaint and the appellee's response meant that it was for a jury and not a judge to decide on the unlawfulness of these occurrences based on the requirements of Title VII and Title 18 Section 241( *which was cited knowing that the district court shall construe the related claim and mandate*). "**once subjectively offensive conduct is established, whether a reasonable person would similarly find the conduct offensive will generally be a question of fact for the jury**" *Daugherty v. Maryland Heights, 231 S.W.3d 814, 818.*

Furthermore, the informal brief platform provided by this 9th circuit court allowed the appellant to demonstrate the existence of significant torts for which the law mandates and requires an evaluation and assessment by a jury (*not a judge*) for the purpose of determining whether a violation of federal and state mandates have occurred. This is why the law state that preferred legal format and theories shall not at any point in a legal proceeding become a barrier to justice. **It is the barrier to**

*Pro Se 7 2016*

**justice that the district court judge became for these claims that renders unlawful the district court decision to dismiss these claims**. *Pleadings should not raise barriers which prevent the achievement of their legal objective to serve as a means of arriving at fair and just resolutions of controversies between litigants in courts. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment*." Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938).

Thus, and based on the above, the district court decision to dismiss these claims shall be overturned.

*Pro Se 7 2016*

## B. Proceedings in The District Court

### 1. Vacating Appointment of Counsel After Plaintiff's Observations Was Unlawful

The appellant understands that there is no right to counsel. That is not the issue here. The issue here is that after having granted counsel to the "Pro Se" plaintiff, the district court decision to vacate appointment of counsel was unlawful because it was unsupported by any legal mandate.

*Appendix P page 482-483* displays the order granting appointment of counsel to the plaintiff. *Appendix P page 484-485* displays the plaintiff's attempt to secure a new counsel with an employment law and civil rights background. In fact, **the plaintiff never requested termination of firstly appointed counsel** but rather inquired about the possibility of appointing a new counsel primary because appointed counsel only practice obituary law, real estate law and criminal law enforcement defense law. The plaintiff secondarily voiced concerned due a lack of urgency and passion of then appointed counsel for the purpose of highlighting the disadvantage created by the lack of familiarity with the relevant field of law .

*Appendix P page 486-487* displays the district court order denying appointment of new counsel and repealing appointment of initially appointed counsel. This repeal of counsel is unsupported by any law whether state or federal. The district court erred in repealing appointed counsel to the plaintiff because neither did the plaintiff request a repeal not did appointed counsel request a termination. There is no law or

legal theory that support this inexplicable decision by the court. Furthermore, ***Appendix P page 488-490*** displays the plaintiff motion for reconsideration asking the court to reconsider appointment of new counsel and re-appoint counsel. At no point in this proceeding this the plaintiff or initially appoint counsel requested a repeal or termination of counsel. This court decision to repeal counsel and the succeeding appointment of a new judge set the stage for the district court proceeding to become a sham that prevented the standard scrutiny, integrity, transparency, compliance, equality and fairness during the proceedings.

Thus, and based on the above, the district court decision to repeal counsel shall be overturned because neither is it supported by any state and/or legal mandate, nor was it requested by the plaintiff and/or its firstly appointed counsel.

## 2. Discovery Disputes Renders Critical the Need for Trial, Examination and Cross-Examination

***Appendix P page 490-499*** displays examples of inexplicable decision made by the court as it pertains to discovery and litigants being held to equal terms and standards. The appellees primarily relied on court orders to oppose discovery and disregard genuine plaintiff's request for production. The district court could not ensure the appellees' compliance to defined standard FRCP Discovery rules as well as its issued standing order for all parties in the proceedings. As communicated in ***Section 1. B) of the informal opening brief***, discovery issues in the district court

*Pro Se 7 2016*

take center stage in determining the proceedings' relevancy , and compliance to the FRCP and federal mandates for equality and fairness during litigations.

The alarming sham created by the malicious and reckless practices of the appellees could only be cured through a trial that allow for examination and cross-examination.

## IV.    Conclusion

Thus, and based on the above, the "Pro Se" Appellant hereby respectfully request that the district Court decision to grant summary judgment to the appellees be overturned.

The appellant also respectfully requests that the district court decision to dismiss his retaliation upon filing an E.E.O.C. Charge, Abuse of Power, and Authority, Conspiracy against rights and Harassment for audits performed at third-party employers' claims be overturned; **and the case be ordered for a reset for new proceedings at the district court because it has been a sham that violated standard legal standards and mandates**.

The appellant also respectfully requests that the district court decision to repeal appointed counsel to the appellant be overturned.

*Pro Se 7 2016*

Date of signing:  09/19/2024_____

Signature of Plaintiff _____

Printed Name of Plaintiff SETONDJI VIRGILE NAHUM_____

*Pro Se 7 2016*

**Harassment Awareness Campaign**

The objective of this section is to ensure this court have an adequate grasp of the full spectrum of circumstances pertaining to this case. Upon the filing of civil action, the appellees were not content with having ambushed, framed and sabotaged the appellant on their premises. They proceeded with the following:

o  *Employment blackmail to prevent the appellant from affording lawyers.*

o  *Conspiracy for employment ambushes and premeditated sabotages of the appellant through their employers' network <u>to create a pattern for the purpose of gaining advantages for legal proceedings</u>.*

o  *Libel and Sabotage campaigns to damage the appellant's stellar record.*

o  *Sabotage of his business enterprise in an attempt to damage the appellant record.*

o  *Electronic harassment, sound campaigns, & electronic hacking campaigns.*

o  *<u>Use of a select network of law enforcement personnel and firefighter vehicle units for sound campaigns, harassment, intimidation, and issuance of fake tickets</u>.*

o  *Use of city, state, and federal resources to discriminate, frame, harass and attempt to derail the appellant well-being.*

o  *"Gangstalking" with the use of federal platform like Infragard and community forums quarterbacked by law enforcement and firefighter unit personnel for the sole purpose of harassment and attempts to derail the appellant well-being.*

o  *<u>Fostered silent and systemic "Hate Crimes" against the appellant</u>.*